7381

MARTHINSON v. McCUTCHEN.

1. FRAUD—LIMITATION OF ACTIONS.—To show a fraud was discovered within the statutory period, a party may testify that he was first informed of the contents of the paper by another at a certain time.

2. EVIDENCE—HEARSAY.—The opinion of a witness as to the amount of timber on a tract of land based on information received of expert estimators as to methods of calculation is not hearsay.

3. IBID.—VALUE.—Evidence as to value of manufactured lumber and of cost of manufacture at the date of a deed and at the present time are competent to show value of timber at the date of the deed.

4. IBID.—That a grantor saw a deed after its execution may be within the knowledge of a third person asserting it and should be so accepted until the contrary is shown.

5. SPECIFIC PERFORMANCE—CLOUD ON TITLE.—Is an action to require a grantor to accept a sum as balance in full due and receipt therefor an action for specific performance or to remove a cloud on title?

6. PLEADINGS—DEMURRER—FRAUD.—An objection that an answer does not allege that the fraud for which a deed is sought to be set aside had been discovered within six years should be taken by demurrer.

7. SPECIFIC PERFORMANCE denied in this case because the deed in question is found to contain other provisions than those agreed on, conveys more timber than sold, and would be an unconscionable bargain.

Before WATTS, J., Williamsburg, December, 1908. Affirmed.

Action by Charles Marthinson, agent, against Hugh Mc-Cutchen *et al.* From judgment for defendants, plaintiff appeals.

*Messrs. Montgomery & Lide, Stoll & Stoll* and *W. F. Stackhouse,* for appellant. *Messrs. Montgomery & Lide* cite: *When deed should be set aside for fraud:* 2 Ency. Ev., 833-4; 94 U. S., 207; 121 U. S., 325; 2 Hill, 666. *Action must be brought within six years of knowledge of fraud:* 16 S. C., 550; 77 S. C., 535. *After writing contract, former colloquium is ended:* 42 S. C., 8. *As to alienage:* 78 S. C., 142.

*Messrs. Willcox & Willcox, Gilland & Gilland* and *Henry E. Davis,* contra. *Messrs. Willcox & Willcox* and *Henry E. Davis* cite: *Charge of fraud makes admissible all evidence necessary to support it:* 20 S. C., 507; 2 Rich., 154; 64 S. C., 69; 75 S. C., 338. *What is cloud on title:* 7 Cyc., 25; 2 Words & Phrases, 1233; 17 Ency. P. & P., 336; 6 Id., 269; 24 Id., 434. *In construing descriptions, boundaries control quantity:* 5 Cyc., 926; 1 Rich., 497; 2 Rich., 481. *Equity will not enforce the deed:* 53 S. C., 563; 1 DeS.,

257; 3 DeS., 272; 2 Strob. Eq., 72; 41 S. C., 349; 2 Pom.
Eq. Jur., secs. 860, 1405; 1 Hill Ch., 51; 43 Am. St. R., 800;
21 Am. St. R., 864; 33 Am. St. R., 834; 34 Am. St. R., 672.
*Parol evidence is admissible to vary or contradict a deed
attacked for fraud:* 2 Rich. Eq., 582; 68 S. C., 106; 71 S.
C., 150; 75 S. C., 338; 20 S. C., 508; 2 Rich., 154; 12 S. C.,
166; 20 Cyc., 110; 64 S. C., 69. *Plaintiff having failed to
comply with the real terms of the agreement cannot ask
specific performance:* 1 DeS., 161, 308; 53 S. C., 572. *Value
of thing sold is admissible to show fraud:* 1 Green. on Ev.,
sec. 14a; 9 Cyc., 767; 1 Wig. on Ev., secs. 392-3. *Falsely
reading the paper is a fraud:* 78 S. C., 419; 10 S. C., 449;
71 S. C., 146, 150; 78 S. C., 430; 26 S. C., 275; 61 S. C.,
338; 53 S. C., 32; 93 Am. Dec., 596; 13 Am. Dec., 222; 19
How., 211; 2 Pom. Eq. Jur., sec. 877, note 2. *Equity will
relieve against unconscionable bargain:* 1 A. & E. Dec. in
Eq., 202; 16 Cyc., 84; 2 Ver. Jr., 125; 2 Pom. Eq. Jur., sec.
874, note 1; 77 S. C., 535. *Contract is void for want of
mutuality:* Riley Eq., 174; 56 Am. St. R., 892; 27 Am. St.
R., 173. *And because price is grossly inadequate:* 4 DeS.,
686; 3 DeS., 273; Rice Eq., 84; 2 Strob., 72; 19 S. C., 606;
21 S. C., 270; 57 S. C., 285; Story Eq. Jur., secs. 246, 927;
19 How., 303; 6 Cyc., 286; 1 A. & E. Dec. in Eq., 202; 60
Am. R., 750; 89 Am. R., 957; Pom. Con., sec. 193; 44 Am.
Dec., 448; 15 How., 60; 2 Pom. Eq. Jur., secs. 927, 928; 1
DeS., 289; 75 S. C., 334; 65 Am. Dec., 157; 4 DeS., 650;
24 S. C., 13; 5 Rich. Eq., 532. *Deed should be cancelled:*
2 Mill, 371; 1 Strob., 400; 26 S. C., 275; 62 S. C., 46; 6
Cyc., 286; 9 Cyc., 433; 2 Pom. Eq. Jur., secs. 839, 899, 910,
21, 926-8, 944-74, 858-9; 44 S. C., 22; 138 U. S., 514; Bail.
Eq., 462; 57 S. C., 418. *Alien cannot have specific per-
formance to put him in possession of land:* 1 McC. Ch., 351;
1 Strob., 522; 3 Brev., 245; 1 Mill, 411; 6 Wait's Acts. &
Defs., 466; 1 Wash. on Real Prop., 74; 28 Am. Dec., 413;
33 Am. Dec., 548; 78 S. C., 134.

November 23, 1909.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    On the 20th of October, 1898, Mrs. M. J. McCutchen executed and delivered to plaintiff a deed; so much of which as is pertinent to the case reads as follows: "Know all men by these presents, that I, Mrs. M. J. McCutcheon, of the county and State aforesaid, in consideration of the sum of one dollar to        in hand paid at the sealing and delivery of these presents (the receipt whereof is hereby acknowledged), by Chas. Marthinson, agent, of the County of Horry, State of South Carolina, and for the further consideration of moneys to be paid me by him at times and in manner following: Seventy-five dollars on or before June 15, A. D. 1899; twenty-five dollars on or before eighteen months from date hereof, and the balance in two equal annual payments from and after A. D. 1900, on the basis of twenty-five cents for trees for all merchantable cypress trees eighteen inches in the small end, and twenty-five cents for all merchantable oak, ash and hickory which will measure twenty inches in the small end, which said Chas. Marthinson, agent, may decide to cut for market, the said Chas. Marthinson, agent, reserves the right to select and count all of the said trees and according to such selection and count pay the said Mrs. M. J. McCutchen at any time before said timber is cut upon all the lands hereinafter mentioned and described, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release, unto the said Chas. Marthinson, agent, all and singular all the timber now standing and being upon that certain tract of land, situate in Turkey and Indian townships, County of Williamsburg, State of South Carolina, containing one thousand acres, more or less, known as Black Mingo Swamp and Boggy Swamp, and bounded as follows: (here follows names of adjacent owners), and west by uplands of M. J. McCutchen."

Nothing is said in the deed about a canal, except that plaintiff is given the right to "build canals and railroads, and do any and all acts and things by him deemed necessary for the proper and convenient cutting, removing and marketing said timber."

The plaintiff paid Mrs. McCutchen $1 the day the deed was delivered; $75, May 23, 1899, and $25, April 10, 1900, and took her receipts therefor. Mrs. McCutchen died July 4, 1900, intestate. The defendants are her heirs. In December, 1901, the plaintiff sent his agent to count the trees with the view of paying for them, and having them cut. The agent and the defendant, D. E. McCutchen, estimated the trees in the swamp by going through and counting those on average strips of a certain width. According to their estimate, there were something over 10,000. The plaintiff was not satisfied with their estimate, and required his agent to go back and make an actual count of the trees. McCutchen was invited to be present, but declined, on the ground that he did not have the time, and said he would be satisfied, if the count came reasonably close to the estimate made by him and the agent. According to the agent's report of the count, there were 2,607 trees—cypress, oak, ash and hickory. The plaintiff tendered $550.75—being the amount due, at 25 cents each for 2,607 trees, after deducting the sum of the cash payments already made. The tender was refused.

Thereupon, plaintiff brought this action. He alleges that defendants are entitled to receive the amount due for the timber, and by their refusal to do so, they are casting a cloud upon his title to said property, and interferring with his rights thereto; and that he is entitled to have them carry out said contract by receiving the amount due by him for said timber, and by executing proper receipts therefor, in order to make good his title to the timber conveyed to him by their ancestor. And he prays "that the defendants be adjudged to carry out and specifically perform said contract of purchase by receiving the money due by him on said timber as

hereinabove set forth and execute their receipts therefor,"
and for general relief.

The defendants answered, alleging that Mrs. McCutchen
agreed to sell plaintiff only the cypress, oak, ash and hick-
ory, of the sizes specified, at the price specified, in Black
Mingo and Boggy Swamps, containing about 1,000 acres;
that he agreed to open a canal, extending from Black Mingo
Creek, at tidewater, through said swamp, which was one
of the considerations of the agreement, as it would be valua-
ble for drainage and for getting out the balance of the tim-
ber; that he also agreed that the count of the trees should
be satisfactory to both parties to the deed; that he prepared
the deed, and read it to her, as containing the said agree-
ment; that he thereby falsely and fraudulently represented to
her that the deed contained the agreement which she had
made with him; that the tract within the boundaries in the
deed contains something over 4,000 acres, including over
3,000 acres of upland, on which there is timber worth at least
$15,000; that she did not read the deed herself, but relied
upon the reading thereof to her by the plaintiff, and executed
the same under the belief that it expressed their agreement,
and that she was ignorant of its real contents, when she
received the payments made to her by the plaintiff, which
they offer to pay back, with interest. They also allege that
plaintiff is an alien, and cannot own or control more than
500 acres of land, under the statutes of this State. There-
fore, they ask that the deed be adjudged null and void.

Upon testimony taken and reported by a special referee,
the Circuit Court found that the agreement was to sell only
the cypress, oak, ash and hickory in Black Mingo and Boggy
Swamps, which contained about 1,000 acres; that the deed
carries not only *all* the timber in those swamps, but also *all*
the timber on several thousand acres of upland; that the
deed was obtained by fraud in the misreading thereof to
Mrs. McCutchen by the plaintiff, in that as he read it to her,
it purported to convey only the four kinds of timber in the

swamps mentioned, and provided that he should cut a canal through said swamps, and that the count of the trees should be mutually satisfactory; that it is wanting in mutuality; that the consideration for the timber thereby conveyed is so grossly inadequate as to shock the conscience; and further, that plaintiff, being an alien, could not, under the statutes, own or control more than 500 acres of land. The deed was, therefore, adjudged to be null and void, and the complaint was dismissed.

The first exception assigns error in admitting the testimony of D. E. McCutchen that he first learned that the deed conveyed all the timber on all the lands described in it from his brother, when the plaintiff sent him the check, on the ground that it is hearsay. The testimony was offered to prove that the defendants had discovered the fraud within six years to prevent the bar of the statute of limitations. The testimony was competent to prove when the said defendant first discovered the fraud.

The second exception assigns error in admitting the testimony of a witness as to the amount of timber on the entire tract, on the ground that it was hearsay. When asked how much there was, he said: "I could not say, sir. I am no timber expert, but just what I have learned from timber estimators, I was talking with different ones, and others who are familiar with such work, there would be something like thirty to forty million feet, possibly more than that." It will be seen that the witness did not testify to what any one had told him was the amount of timber on this land, but it is rather to be inferred from his answer that it was his own estimate, based on information obtained from expert estimators, not as to the amount on the tract in question, but as to the method of estimating the amount of timber on lands generally. It is by no means certain, however, that the Court considered this testimony, No objections were interposed to any of the testimony, when it was taken, under agreement of counsel, that either side

should have the right to object to any of it on any ground at the trial.  This testimony was designated by plaintiff's counsel as objected to on the ground specified; but it is also the opinion of the witness.  And in his decree, his Honor said that he sustained plaintiff's objection to "certain testimony which is opinion of witnesses."  Besides, the amount and value of the timber was abundantly proved by other competent testimony, and, therefore, even if it was error to consider the testimony objected to, the error would be harmless. *Garrick* v. *R. R. Co.*, 53 S. C., 448, 31 S. E., 334.

Testimony was admitted as to the relative value of manufactured lumber and the cost of manufacturing the same at the date of the deed, and at the present time. This was competent and relevant, as tending to show the value of the timber at the date of the deed.

One of the defendants was asked, if his mother ever saw the deed after she signed it.  His reply was: "No, she never did."  This is objected to on the ground that it is either hearsay, or the opinion of the witness.  We cannot say that it was either.  If so, it should have been brought out on cross-examination.  The witness answered as if the matter was within his own knowledge, and it may have been.

The appellant complains that the Court held that this action was one for specific performance.  It makes little difference whether the action be called one of specific performance, or one to remove a cloud on the plaintiff's title, though we think it has more of the features of the former than of the latter.  Of more importance are the questions: What are the facts, and what are the rights and equities of the parties consequent upon the facts found?

It is alleged that his Honor erred in holding that defendants had interposed the defense of fraud, when there was no allegation that the fraud had been discovered within six years before the filing of their answer.  Such an allegation

was necessary.  *Smith* v. *Linder*, 77 S. C., 535, 58 S. E., 610.  This point seems to have been raised for the first time during the argument in the Circuit Court.  As it went to the sufficiency of the facts alleged in the answer, constituting the defense, it should have been raised by demurrer.  Not having been so raised, it must be deemed to have been waived.  Code, vol. 2, sec. 169.  But his Honor ordered the answer to be amended to meet the objection, and from this order there is no appeal

While there may be some doubt about some of the alleged provisions of the agreement, the testimony is clear and convincing that Mrs. McCutchen agreed to sell the plaintiff only the cypress, oak, ash and hickory, of the sizes specified, in Black Mingo and Boggy Swamps, which contained about 1,000 acres, and it is equally clear that the deed, as prepared by the plaintiff, conveys to him not only *all* the timber of every kind, in said swamps, but also *all* the timber on several thousand acres of upland, and that the consideration expressed in the deed is grossly inadequate.  This, if itself, would be sufficient to warrant the Court in refusing to enforce the contract.  The plaintiff himself does not seriously contend that he bought all the timber so conveyed, though, in his complaint, he does allege: "That said deed covered and embraced all the timber standing and being at the time said deed was executed, on that certain tract of land (describing it as in the deed)."  And in his testimony, he says: "Some time later, Mr. Carter reported his findings of cypress, oak, ash and hickory on the land in question, which was all the timber that was to be considered, although the entire amount of timber upon the land was part of the deal, when I made my purchase from Mrs. McCutchen."  In his testimony, in reply, he said: "Q. What portion of this tract did you understand these boundaries to cover?  A. I was willing to take the swamp portion at that time, and I was not aware that I was securing any more timber than there was on the swamp

portion. If there was other hardwoods on any other portion of the land, that would be subject to this contract or deed, of course, I was willing that they should be put in. Q. But you understood these boundaries to cover the swamp portion? A. That was what I intended them to cover. I was willing to take that part. Q. Did you or not purchase all kinds of timber on the swamp portion? A. I did, sir. I understood I was getting only the swamp portion at the time we made this deed. Q. But you understood, did you not, that you were getting all kinds of timber on the swamp? A. Yes, sir."

His explanation of the fact that the deed covers the timber on so large an area of upland, as well as the swamps, was that he did not know the boundaries, which were given to him by D. E. McCutchen, who was acting for his mother. While that may account for the deed covering a very much larger area than was intended, it does not account for the fact that it conveys *all* the timber not only in the swamps, but upon the whole tract, when the agreement was that he was to get only the four kinds specified. His own testimony and his subsequent conduct, in having only the four kinds counted, shows that he so understood the agreement. Yet, when he brought his action to have the contract specifically performed, he did not allege that the deed, by reason of any mistake on his part in drawing it, either as to the boundaries given him by McCutchen, or as to the conveyance of all the timber, instead of the four kinds specified, did not express the true agreement of the parties, and ask that it be reformed; but he alleged that it covered all the timber standing on the tract therein described, and asked the Court to compel the defendants to perform the contract, as it was.

It is well settled that specific performance rests in the sound discretion of the Court; and that the Court will not decree specific performance of hard and unconscionable bargains, or where the price is so grossly inadequate as to shock

the conscience, and raise a presumption of fraud.  *Reese* v. *Holmes,* 5 Rich. Eq., 571; and certainly not where it appears that the contract sought to be enforced does not express the true agreement of the parties, either by reason of fraud, accident or mistake.   The general rule is that to merit the interposition of the Court, it must appear that the contract is fair, just and equitable.  *Cabeen* v. *Gordon,* 1 Hill Eq., 51; *Holley* v. *Anness,* 41 S. C., 354, 19 S. E., 646.

We think the preponderance of the evidence also shows that one of the considerations of the agreement was that plaintiff would cut a canal through the swamps.  In his testimony, in reply, plaintiff said: "Q. Did you ever make any statement as an inducement to this purchase, or otherwise, that you would canal the swamp?  A. No, sir.  All that has ever been said about canals was said in that document.  It would have been disastrous, in my judgment, if I had gone to any of those owners and proposed to cut their swamp through with canals.  I would have considered such a proposition would have defeated any proposition I hand in view.  It would have cut it up in pieces that the stock could never have gotten to it without swimming or crossing the ditch or canals which they have been talking about, and would have been no benefit whatever to the swamp in the way of draining it for cultivation, because that territory is totally unfit for cultivation because it is subject to overflow."   Notwithstanding, he says that to have suggested the cutting of a canal would have defeated his purpose, it will be seen that the deed, as prepared by him, gives him the right to cut such canals, which tends to prove the defendant's contention that he inserted in the deed provisions which had not been agreed to.

From the view which we have taken of the case, we do not consider it necessaray to consider or decide the question whether, the plaintiff, being an alien, enforcing the contract in question would violate the provisions of the statute that

"no alien * * * shall own or control, within the limits of this State, more than five hundred acres of land."

Judgment affirmed.