# FARRAR *v.* CHURCHILL.

## CHURCHILL *v.* FARRAR.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

Nos. 266, 603. Argued April 16, 1890. — Decided May 19, 1890.

Cross-appeals in equity must be prosecuted like other appeals; and although they may be taken and allowed after removal of the cause, on appeal, to this court, yet that cannot be done after the lapse of two years from the date of the decree.

The court takes notice of the facts that in this case no assignment of errors was annexed to the transcript of the record as required by law, and that no specification of errors was made in the brief of counsel, as required by the rule, and expresses the hope that there will be no recurrence of such omissions.

If a purchaser of real estate, to whom representations of the character and value of the property are made by the vendor, visits the property itself prior to the sale, and makes a personal examination of it touching those representations, he will be presumed to rely on his own examination, in making the purchase, and not upon the representations of the vendor, and in the absence of fraud or concealment, cannot have the sale set aside: applying this rule to the present case, the bill must be dismissed.

IN EQUITY. Decrees dismissing the bill and the cross-bill. Each party appealed. The case is stated in the opinion.

*Mr. Alexander Pope Humphrey* (with whom was *Mr. George M. Davie* on the brief) for Farrar, administrator.

*Mr. W. Hallett Phillips* on behalf of Churchill submitted a motion to dismiss the cross-appeal on his brief. *Mr. W. Hallett Phillips* on behalf of *Mr. William L. Nugent* for Churchill and another, on the merits submitted on Mr. Nugent's brief.

Mr. Chief Justice Fuller delivered the opinion of the court.

John Churchill held title to certain lands in Mississippi, as trustee for Mary M. Clark, whose husband, M. L. Clark, in 1881, employed J. H. D. Bowmar, of Vicksburg, to sell the property, which he did, to A. B. Pittman, also a resident of that city, and on the 16th of March, 1882, Churchill as trustee, and Mr. and Mrs. Clark, all residing in Louisville, Kentucky, conveyed the lands and "the mules, implements and cattle on the plantation, save two horses, reserved by said two parties," to Pittman. This conveyance recites that it is "made this 9th day of January, 1882," but the attestation clause is that the signatures are appended the 16th day of March, 1882, "the date of the sale being of 9th January, 1882," and the acknowledgment by the grantors is March 16. The consideration of the conveyance was $5000 in cash, and four notes of Pittman for $5000 each, bearing interest at eight per cent and payable at one, two, three and four years from date.

In the latter part of January, 1882, certain other personalty on the premises was sold by Clark to Pittman for $1000 cash and three acceptances, one for $1000, due April 1, one for $1000, due May 1, and one for $1133.10, due June 1, 1882, with grace. Two of these acceptances were transferred by Clark to the trustee, who, when they matured, brought a separate suit upon each of them. The other acceptance passed into the hands of a *bona fide* holder without notice. When the first of the notes given as consideration for the conveyance became due, suit was brought upon it, and on the 7th of November, 1883, Pittman filed his bill in the Circuit Court of the United States for the Southern District of Mississippi against John Churchill, trustee, and Mr. and Mrs. Clark, alleging that fraudulent representations had been made to him in the sale of the plantation and accompanying personal property, and also in the matter of the personalty subsequently purchased from Clark, and asking that the three suits above mentioned be enjoined; for an account of damages suffered, and their application by way of recoupment, offering to pay

whatever might be found due on a proper accounting; and for general relief. It is admitted by counsel for appellants that the controversy over the latter purchase has been satisfactorily adjusted, and that so much of the transaction is only incidentally referred to in connection with the other fraud, circumvention and deceit alleged to have been practised. The bill claimed failure of title as to part of the land, but this was fully met by the answer, was not pressed below, and may be regarded as out of the case. The oath to the answers was not waived, and accordingly the answer of Mary M. Clark and John Churchill, trustee, was duly verified. Clark was not served and filed no answer, but his deposition in one of the law suits was put in evidence.

A cross-bill was subsequently filed by Churchill and Mrs. Clark, praying that an account be had and stated between the parties; that whatever was found to be due from Pittman on the notes for the purchase-money of the plantation should be decreed to be a lien thereon and the land sold to pay the same; that cross-complainants might have judgment for the amount found due on the two notes given for the personalty; and that a receiver be appointed, etc. It was, ordered by the court that the cross-bill be treated and held as for a receiver only, and the complainant's bill as the answer thereto, as well upon the motion for a receiver as at the hearing; and that the cause be referred to an examiner and commissioner to take proof upon the issues set out in the bill, and " of the damages claimed by the complainant, and state an account between the parties, recouping against the purchase-money due the defendant the damages suffered and sustained by the complainant, if any, because of the alleged frauds and misrepresentations set out in the bill, should they be established to his satisfaction." Proofs were accordingly taken and a report made by the special commissioner, and a final decree rendered, November 5, 1885, in favor of Churchill, trustee, for the recovery from the complainant of the sum of $19,129.50, to bear interest at the rate of eight per cent per annum from the second day of September, 1885, until paid; and that said sum of money with interest and costs should be a first and prior lien

on the lands in question, which should be sold, in satisfaction, in default of payment, as provided. From this decree an appeal was prayed by the complainant, an appeal bond duly given and approved December 1, 1885, with Thomas Rigby as surety, and the record was filed in this court November 13, 1886. The opinion of the District Judge holding the Circuit Court was filed September 2, 1885, and appears in the record.

On October 31, 1887, the defendants Churchill and Clark presented a petition for a cross-appeal to a Justice of this court, and obtained an allowance thereof, an appeal bond being approved, and a citation issued on that day. This petition was filed in the Circuit Court on the 7th day of November, 1887. The citation bears this endorsement : " On this 5th day of November, in the year of our Lord one thousand eight hundred and eighty-seven, I, as administrator of the estate of Alfred B. Pittman, accept service of the within citation, and hereby enter my appearance as such administrator herein, Walton Farrar, Adm'r." This citation accompanied the tran-. script of the petition, order and bond on cross-appeal filed in this court November 21, 1887. It appeared from the petition that since the original appeal was taken, Alfred B. Pittman had died, and the cause had been revived in the name of Walton Farrar, as administrator.

No decree in any action in equity can be reviewed by this court on appeal, unless the appeal is taken within two years after the entry of such decree. Rev. Stat. § 1008. And appeals are subject to the same rules, regulations and restrictions as are or may be prescribed in law in cases of writs of error. Rev. Stat. § 1012. As it is the filing of the writ of error in the court which rendered the judgment that removes the record, the writ of error is not brought in the legal meaning of the term until it is so filed, *Brooks* v. *Norris,* 11 How. 204; nor is an appeal "taken" until it is in some way presented to the court which made the decree appealed from. *Credit Company* v. *Ark. Central Railway Company,* 128 U. S. 258.

Cross-appeals must be prosecuted like other appeals, and therefore the cross-appeal is not taken until brought to the

attention of the court whose decree it questions. Although·
the record may have been removed to this court upon appeal,
yet·the court below may allow a cross-appeal, sign a. citation,
and approve a bond, within the two years prescribed. And so,
when a cross-appeal is allowed by a justice of this court, the
petition ~and order of allowance must be filed in the court
below, in order to the due taking of the cross-appeal under the
statute. As in this case, the petition, order and bond were not
filed in the Circuit Court until·after two years· had ·elapsed
from the date of the entry of the decree, the cross-appeal must
be dismissed.

· The amount due to Churchill, trustee, upon the notes and
acceptances, does not appear to have been questioned, and
with. interest from January 9, 1882, to the 2d day of Septem-
ber, 1885, reached the sum of $28,541.70: The court passed
upon exceptions embracing the items of damages claimed by
way of recoupment set forth in the commissioner's report, and
allowed the sum of $7454, which, with interest to September
2, 1885, made an aggregate of $9412.20, and that amount being
deducted from the $28,541.70, left a balance of $19,129.50 in
favor of the defendant Churchill, trustee, for which the decree
was rendered. The dismissal of the cross-appeal dispenses·
with any inquiry into these allowances so far as the cross-.
complainants are concerned.

By section 997 of the ·Revised Statutes, an assignment of·
errors is required to·be annexed to and returned with a ,writ
of error, and the rules, regulations· and restrictions are, as
remarked before, the same as· to appeals as in cases. of writs
of error. ' By the twenty-first rule of this court, it is, among·
other things, provided that the brief of counsel for plaintiff in·
error or appellant shall contain "a specification of the errors·
relied upon, which, in cases brought up by writ of ·error, shall
set out separately and particularly each error asserted and
intended to be urged ; and in cases brought up by appeal the
specification shall state, as particularly as may be, in what the
decree is alleged to be erroneous. . . . When the error
alleged is to a ruling upon the report of a ·master, the specifi-·
cation shall state the exception to the report and the action of

the court upon it. . . . When there is no assignment of errors, as required by section 997 of the Revised. Statutes, counsel will not be heard, except at the request of the court; and errors. not specified according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned or specified. When, according to this rule, a plaintiff in error or an appellant is in default, the case may be dismissed on motion."

There is no assignment of errors annexed to the transcript of the record in this case, nor does the brief of counsel contain any specification of errors, such as is required by our rule. We shall not in this instance decline to consider what we suppose to be the errors relied on, but we call attention to this disregard of the statute and the rule, in the hope that nothing more is needed to prevent its recurrence hereafter.

Appellants insist that the Circuit Court erred in not allowing complainants for the difference in value of eight hundred acres of the land in question, alleged by them to have been warranted to be above overflow, but to be subject to it; for rebuilding fences and cleaning ditches, and replacing foundations to houses, in consequence of overflow; and for loss occasioned by deficiency in cleared land. The charge is of fraudulent representations, by the defendants or their agent, as to the freedom of the lands from liability to overflow from the Mississippi. River, and also as to the number of acres of cleared land in the tract conveyed.

It was held in *Andrus v. St. Louis Smelting and Refining Company*, 130 U. S. 643, 648, that "false and fraudulent representations upon the sale of real property may undoubtedly be ground for an action for damages, when the representations relate to some matter collateral to the title of the property and the right of possession which follows its acquisition, such as the location, quantity, quality and condition of the land, the privileges connected with it, or the rents and profits derived therefrom."

In *Myers v. Estell*, 47 Mississippi, 4, 21, the Supreme Court of Mississippi said: "In an action for the price of land sold, the purchaser may set up in defence the fact that the vendor

defrauded him by false representations. as to the quantity, quality, condition or boundaries of the land. An offer to rescind the contract is not necessary in order to entitle the purchaser to maintain an action for damages for the fraud, . . . . nor to entitle him to defend to the extent that he has suffered by the fraud, that is, to the extent that he would be entitled to recover in an action for damages founded on the fraud. The question may as well be tried in an action for the price, and the rights of the parties be settled in one suit, as to allow the plaintiff to recover the whole stipulated price, and then permit the other party to recover back the whole or a part in an action for the fraud. It is the policy of the law to avoid a multiplicity of suits." In *Estell* v. *Myers*, 54 Mississippi, 174, and 56 Mississippi, 800, the vendor having filed his bill for the foreclosure of his mortgage for the purchase money, the defence of false representations was set up, and it was held that the vendee might recoup in damages (1) the difference in the value of the land, either party being at liberty to show that the actual value was more or less than the land would have been worth if it had answered the representations, the contract price to be taken as the value of the thing as represented, unless a higher or lower value was clearly established; (2) for the deficit or loss of crop by reason of overflow; (3) for the drowning of cattle and animals; and (4) for the expense of replacing fences, etc.

The general principles applicable to cases of fraudulent representation are well settled. Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate and material. If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations. *Southern Development Com-*

*pany* v. *Silva*, 125 U. S. 247. "If the party to whom the representations were made," remarked Lord Langdale, in *Clapham* v. *Shillito*, 7 Beavan, 146, 149, "himself resorted to the proper means of verification, before he entered into the contract, it may appear that he relied on the result of his own investigation and inquiry, and not upon the representations made to him by the other party ; or if the means of investigation and verification be at hand, and the attention of the party receiving the representations be drawn to them, the circumstances of the case may be such, as to make it incumbent on a court of justice to impute to him a knowledge of the result, which, upon due inquiry, he ought to have obtained, and thus the notion of reliance on the representations made to him may be excluded."

In *Hall* v. *Thompson*, 1 Smedes & Marsh. 443, it was held that where T. sold a tract of land to H., and represented that it contained only fifty or sixty untillable acres, whereas, about three hundred acres were unfit for cultivation, but, prior to the sale H. examined all the land more than once, H. was not entitled to rescind the contract on the ground of misrepresentation ; *sed aliter*, if fraud had been employed to conceal the defects. And the court ruled, Sharkey, C. J., delivering the opinion, that misrepresentation entitling to relief must be in reference to some material thing unknown to the purchaser, either from not having examined, or from want of opportunity to be informed, or from entire confidence reposed in the vendor ; that a concealment of material facts known to the vendor and unknown to the vendee, which are calculated to influence the action or operate to the prejudice of the vendee, is fraudulent, but that where the facts lie equally open to both vendor and vendee, with equal opportunities of examination, and the vendee undertakes to examine for himself, without relying on the statements of the vendor, it is no evidence of fraud in such case that the vendor knows facts not known to the vendee and conceals them from him. *Cleaveland* v. *Richardson*, 132 U. S. 318, 329.

At the same time, silence may be under some circumstances equivalent to false representation, *Stewart* v. *Wyoming Ranche*

*Company,* 128 U. S. 383, 388, where it is stated: "In an action of deceit, it is true that silence as to a material fact is not necessarily, as matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud celare;* a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth." Applying these rules to the case in hand, we find no adequate ground for disturbing the decree.

Mr. and Mrs. Clark and the trustee, Churchill, resided in Louisville, in the State of Kentucky. The land was situated in the State of Mississippi, of which the complainant was a citizen, residing at Vicksburg. The bill states that the defendants' agent was "one J. H. D. Bowmar, a real estate agent in Vicksburg, said district, of undoubted integrity and of the most excellent standing and reputation, who was well known to your orator and possessed his fullest confidence, as indeed he does that of the whole community;" and that Bowmar delivered to complainant a written memorandum in respect to the plantation he proposed to sell as follows:

"First-class plantation in Bolivar County, on Miss. River; 1550 acres in tract, 1060 acres under cultivation; dwelling, with 6 rooms, halls and galleries, and suitable outbuildings; stables for 70 mules; 2-story barn, with cribs to hold 7000 bushels of corn; clover and millet lots; new fencing; place well ditched and drained; 14 cabins, 4 rooms each; 11 cabins, 2 rooms each, all new; a fine garden attached to the dwelling; 26 acres of the above cleared land detached, but only half a mile away; 4 cabins; 40 mules; full supply of farming implements; price, $25,000. Have written for terms.

"J. H. D. B.

"Owner of the property says 800 acres above overflow; the levee engineer says 500, and all high lands opposite Arkansas City, on Miss. River."

Complainant testifies that he purchased the property on the faith of this statement, and informed Bowmar that he relied "on all of these representations therein contained as material inducements." He says he visited the plantation in the latter part of December, after he "had closed the purchase. I was there about the 30th or 31st of December, 1881, but was not able to judge to what extent the particulars in Dr. Bowmar's mem. were accurate, except of course as to the buildings and fences." In his bill, Mr. Pittman puts the acceptance of the proposition as after his return from visiting the plantation, and this is confirmed by the evidence of Taylor, Clark's manager, that when Pittman came there he "stated that he wanted to buy the place, and thought that he would, in case he bought the place, need all the supplies." The letter of acceptance is as follows:

"VICKSBURG, MISS., Dec. 29, 1881.
"Dr. JAS. H. D. BOWMAR.
"DEAR SIR: I accept your offer made in behalf of the owners of the Timberlake plantation, based on the representations made as to the amount, character, etc., of the lands and personal property.				A. B. PITTMAN."

Mr. Bowmar testifies that he was employed by Mr. Clark to sell the place, and for that purpose delivered the memorandum to complainant, "which memorandum was based on information received from Mr. Clark and Captain Anderson, the engineer of levees for the district in which said land is located; I knew nothing personally of the property, as I, at the time of delivering the memorandum, informed the complainant. My recollection is that we agreed that he should make a personal examination of the property before purchasing, so as to satisfy himself as to the correctness or incorrectness of the statements contained in said memorandum. I was especially solicitous on this point, as I myself knew nothing of the place and did not wish the complainant to be misled by any representations coming from me." This is not specifically denied by Pittman.

Taylor states that in the last of December, 1881, Pittman

and Gayle, "both strangers to me, came to the plantation and introduced themselves to me, and said they wanted to look at the plantation with a view to buying it. I had horses sad-dled and took them all over the plantation, from one end to the other, all around it and through it, and brought them back to the house." We can find nothing in the evidence of Gayle to the contrary. After complainant's acceptance, he gave bond for the cash payment and received an order from Dr. Bowmar for the possession, which was dated January 23, 1882, and is set out in the bill. The deed was executed on the 16th of March, 1882, and conveys by description eight hundred and twenty-seven and fifty-five hundredths acres of cleared land, and one thousand and seven and sixty-nine hun-dredths acres of wood land.

Gayle, Pittman's manager, says that there was an overflow in 1882, by which they were delayed until the latter part of March before they could begin to plough, and it made them very late. Dr. Bowmar testifies that he saw the front of the plantation under water in 1844, when it was owned by Mar-tin of Louisville; that he had been told that it overflowed in 1862, and that he heard it was overflowed in 1882; that the overflow of 1882 was more general and disastrous in its effect than any previous one within his knowledge or infor-mation, and he had lived in the valley of the Mississippi for about fifty years, his occupation prior to the war being that of a planter; that lands previously recognized as being above overflow were generally inundated by the overflow of 1882; and that the words "above overflow" are usually understood to mean above any overflow previously known to persons familiar with the valley.

There is no evidence in the record to show that Clark knew that the place had ever overflowed. The defendants, Churchill and Mrs. Clark, in their answer state that they have always understood that the greater part of the cleared land was above the ordinary overflows of the Mississippi River. They deny that said lands were overflowed several times or at all before said complainant purchased the same; and say that if the lands or the greater part of them were ever overflowed,

they did not and do not now know it; and that they have
been informed and believe that even in the extraordinary
overflow of 1882 a considerable part of said lands was not
overflowed; they deny making any representations to the
plaintiff to induce him to purchase the plantation, or that
they made any representations at all in regard to it; they
deny that Bowmar was authorized in any manner to make
any representations to the complainant; they specifically deny
that they made any representations in regard to the quantity
of cleared land or the number of acres exempt from overflow,
or that any one acting for them was authorized to make, or
did make, any such representations; and they deny that they
represented that there was one thousand and sixty acres of
cleared land on the tract, but say that they believe the tract
did and does contain that number. Inasmuch as an answer
under oath was not waived, the rule that these denials must
be disproved by evidence of greater weight than that of one
witness, or that of one witness with corroborating circum-
stances, applies; and, taking this evidence together, it falls
far short of establishing such a case as would entitle com-
plainant to recover for false representations, as claimed. The
memorandum refers to one thousand and sixty acres under
cultivation; but Mr. Bowmar's testimony (and his undoubted
integrity is conceded by complainant) is that he told the com-
plainant that he was personally unacquainted with the land,
and that he was solicitous that complainant should make a
personal examination so as to satisfy himself as to the correct-
ness or incorrectness of the statements in the memorandum;
and it appears that complainant went personally upon the
ground, which ought to have enabled him to determine sub-
stantially how many acres were in fact under cultivation.

Turning to the deed, it only purports to convey, and that
by specific description, eight hundred and twenty-seven and
fifty-five hundredths acres of cleared land. This deed was
given in the middle of March, 1882, and it would be entirely
unwarranted for us to hold the contents of that instrument to
be overthrown by the proof before us, particularly in view of
the rule that all preliminary negotiations or agreements were

merged in it. The contract had ceased to be executory, and while fraud, if clearly made out, might still justify relief, *Boyce's Exrs.* v. *Grundy*, 3 Pet. 210, the deed cannot be brushed away as the result of the evidence in this record.

Upon the whole case, we see no reason for doubting the correctness of the conclusions at which the District Judge arrived.

*The cross-appeal is dismissed and the decree is affirmed.*