McCLURE et al. v. GLADY FORK LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit, October 13, 1910.)

No. 970.

1. BOUNDARIES (§ 41*)—ACTION TO DETERMINE—SURVEY—NATURAL OBJECTS AS CORNERS.

In an action of ejectment to recover a tract of land surveyed as one subdivision of a larger tract in 1842, where the notes and plat of survey call for definitely described natural objects as corners which can be identified, it was error to instruct the jury that they might ignore such monuments if satisfied that the surveyor made a mistake, of which there was no oral or other evidence, except that the survey does not give plaintiff the quantity of land called for, especially where the owners of other subdivisions of the tract whose lands would be affected have possessed and occupied the same for such length of time as gives them a perfect title by prescription to the boundaries claimed by them.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 205–207; Dec. Dig. § 41.*]

2. BOUNDARIES (§ 11*)—ACTION TO DETERMINE—ACQUIESCENCE.

A purchaser of a tract of land described by definite and ascertainable boundaries is not entitled at law or in equity to a reformation and enlargement of such boundary at the expense of adjoining owners.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 92–94; Dec. Dig. § 11.*]

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Philippi.

Action by the Glady Fork Lumber Company against John W. Mc-Clure, W. H. Tyson, and Charles H. Irvin. Judgment for plaintiff, and defendants bring error. Reversed.

On May 7, 1842, David Goff, commissioner of forfeited and delinquent lands for Randolph county (then in the state of Virginia, but now in the state of West Virginia), reported a tract of land as forfeited in the name of Henry Phillips and John Law, containing 14,845 acres, and by order of the circuit superior court of law and chancery for said county the commissioner was directed to ascertain the boundaries of the land and the junior grants therein, if any, and lay the residue off into convenient lots and sell the same. Commissioner Goff laid the tract off into various lots, and on the fourth Monday in August, 1842, sold the same at public auction, and afterwards reported his proceedings to the court, and on October 5, 1842, said sale was confirmed and a plat of the subdivision of the tract was made as sold by the commissioner, and entered of record.

On October 5, 1842, the commissioner reported to the court another tract of 17,000 acres of land, a part of a tract of 100,000 acres, as forfeited and delinquent in the name of William De Wees, and on the same day an order was made by said court directing the commissioner to lay off the last-mentioned tract into convenient lots, if necessary, and sell the same at public auction, and after laying said tract off into 19 lots of various sizes, on the 4th Monday in November, 1842, the same was sold and said sale confirmed. On the said 5th day of October, 1842, Commissioner Goff reported another tract of 22,104¼ acres of land as forfeited in the name of Richard Smythe, and on the same day the court ordered the boundaries of the said last-mentioned tract to be ascertained, etc., and ordered the commissioner to sell the same on the fourth Monday in November next, and, in accordance with this order, the commissioner laid the 22,104¼ acres of land off into 26 lots of various sizes, and on the date directed in the decree of sale sold the same to various persons, and on October 6, 1843, this sale was confirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the sale of the 17,000 acres of land forfeited in the name of William De Wees, Nimrod Dent, Jr., became the purchaser of lot No. 3 of 1,056 acres, No. 4 of 1,372 acres, No. 5 of 906 acres, and No. 6 of 1,087 acres, and on April 5, 1844, by deed of that date, David Goff, commissioner, etc., conveyed said four lots to Nimrod Dent, Jr. At the sale of De Wees 17,000 acres of land Jonathan Arnold became the purchaser of lot No. 9 thereof, a part of the 100,000 acres forfeited and sold in the name of said William De Wees, and on February 20, 1844, said Goff, as commissioner, conveyed lot No. 9 to the purchaser, Jonathan Arnold, and, in said deed the same is bounded as follows: "Beginning at three beeches and hemlocks, a corner to Nos. 3, 4, and 10, thence S. 36° E. 888 poles to a corner of Nos. 5, 6, and 8, thence S. 54° W. 174 poles, thence N. 36° W. 818 poles to a sugar, thence S. 31° W. 128 poles to a beech and spruce and two hemlocks, thence N. 54° E. 320 poles to the beginning."

The title to lots Nos. 3 and 4, purchased by Nimrod Dent, Jr., passed by successive alienations to S. Bacon Eilenberger and J. H. Yeager, by two deeds of conveyance, the first of which was made June 17, 1893, and the second May 3, 1909, the latter deed merely confirming the former. Eilenberger and Yeager conveyed all the timber on said lots, and one-half of the fee, to Harrison Lewis et al. by deed dated December 12, 1902, and Lewis et al., by deed dated June 10, 1905, conveyed the same to the plaintiffs in error herein. The title to lot No. 9 passed by successive alienations from the purchaser, Jonathan Arnold, to the defendant in error herein.

The plaintiffs in error claim the three beeches and two hemlocks, marked and designated on the official plat by a figure "1," with an arrow pointing thereto, to be the beginning corner lot No. 9 as conveyed by David Goff, commissioner, to Jonathan Arnold, and a common corner between their lots Nos. 3 and 4, and known and designated upon the official plat as the "Flint Corner," and that the three beeches and two hemlocks were marked on the official plat as the "Flint Corner" by David Goff, commissioner, at the time he laid off and sold the De Wees 17,000 acres, as the corner between lots 3, 4, 9, and 10. This is not seriously controverted by the defendant in error, but it contends that Commissioner Goff was in error when he marked the three beeches and two hemlocks as a corner to said lots, and claims that the said corner should be at the white figure "1" on the plat filed with the record, and the black or blue figure "1," on the original tracing.

The plaintiffs in error claim the calls in the defendant in error's deed beginning at three beeches and two hemlocks, known as the "Flint Corner," and by running the calls of its deed to the figure "2," thence to figure "3," thence to figure "4," thence to figure "5," thence to figure "6," thence back to figure "1" to the place of beginning marked "Flint Corner," is the correct boundary of the defendant in error's land, while the defendant in error claims that the plaintiff in error's land stops at the white dotted line, and should follow that line through from white figure "1" to figure "2," thence to figure "3," thence to figure "4," thence to figure "5," thence to figure "6," thence back to figure "1."

E. D. Talbott and U. G. Young (Talbott & Hoover, on the brief), for plaintiffs in error.

E. A. Bowers and W. B. Maxwell (F. O. Blue, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and KELLER, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). As appears from the statement of facts, this is an action instituted by the defendant in error as plaintiff in the court below against the plaintiffs in error who were the defendants below. Therefore reference will be made to the defendant in error, as plaintiff, and to the plaintiff

in error, as defendant, in discussing the questions involved in this controversy.

The plaintiff alleges that it is the owner and possessed of all the timber upon a certain tract of land of —— acres, being a part of lot No. 9 of the De Wees survey lying west of the top of Middle Mountain, situate in the county of Randolph, state of West Virginia, and described as follows:

"Beginning at three beeches and hemlocks, a corner to Nos. 3, 4, and 10, thence S. 36° E. 888 poles to a corner of Nos. 5, 6, and 8, thence S. 54° W. 174 poles, thence N. 36° W. 818 poles to a sugar, thence S. 31° W. 160 poles to a corner of No. 13, thence N. 36° W. 128 poles to a beech and spruce and two hemlocks, thence N. 54° E. 320 poles to the beginning."

The sole question at issue is as to the true location of the lot of land described in the declaration. It appears that lot No. 9 is one among a number of lots carved out of what is known as the De Wees 17,000-acre tract. The beginning corner of this lot is designated as follows: "Three beeches and hemlocks, a corner of lots 3, 4, and 10." This beginning corner is a common corner between lots Nos. 3 and 4, claimed by the defendants. The declaration filed by the plaintiff sets forth with particularity the metes and bounds of the lots sought to · be recovered. These calls are free from ambiguity, and are capable of being located by any competent surveyor. The three beeches and hemlocks called for as the beginning corner of lots Nos. 3, 4, and 10 were established by the surveyors at the time the division was made, and as to their location at that time there seems to be no real controversy. It was shown at the trial that the annulations of the marked trees that were blocked corresponded to the time that the commissioner subdivided the De Wees land in 1842. It was also shown that in running the lines according to these calls trees were found the marks on which corresponded in age to the date of the survey, and the location of the tract in accordance with these well-defined calls was accomplished by Surveyor Taylor without the slightest difficulty.

Notwithstanding the fact that this suit was instituted on the law side of the docket and is in the nature of a suit in ejectment, involving · as it necessarily does the location of the land on which the timber in question was standing, the case below seems to have been tried on the theory that Commissioner Goff made a mistake in locating the lines of lot No. 9, and that the court in a proceeding of this nature had the power to correct the same.

We will first consider instruction No. 1, which is in the following language:

"The court instructs the jury that although they may believe from the evidence that Commissioner Goff in laying off the De Wees 17,000-acre tract of land into lots under the order of the circuit superior court of law and chancery of Randolph county in fact made the corner at the letter 'H,' shown on the official plat of surveyor, E. E. Taylor, in evidence in this case, and in fact ran and marked the line from the corner at said letter 'H' to the corner shown at the red figure '1' upon said map, and made the corner at said red figure '1,' and, in fact, ran and marked the line from said red figure '1' to the red figure '6,' and made the corner at said red figure '6,' and, in fact, ran and marked the line from said red figure '6' to the figure '5,' yet, if the jury believe from all the evidence in this case that said Commissioner Goff in running

and marking said lines and in making said corners mislocated said lines and corners by mistake, and intended to locate said lines and corners so as to correspond with the black dotted lines, shown upon said official plat, and intended the beginning corner of lot No. 9, in controversy in this case, to be located at the black figure '1,' as shown upon said plat, and intended the true boundary of said lot No. 9 to be as designated by the black dotted lines thereof, as shown upon said plat and designated by the black and blue figures '1,' '2,' '3,' '4,' '5,' and '6,' that then the mislocation of said corners at the red figures '1,' '6,' and '5,' and the lines connecting said corners, are not binding upon the parties, and the jury should disregard the same and treat said mislocated corners and lines as having been made by mistake, and the jury should adopt as the true lines and corners between the parties the black dotted line of said lot No. 9 as shown upon said official plat of surveyor E. F. Taylor."

This instruction virtually assumes that the beginning corner of lot No. 9 was located by Commissioner Goff as contended by defendants. However, the court submitted to the jury the question as to whether Commission Goff made a mistake in locating the corners at the point indicated by the calls, as shown in the report of the surveyor and as indicated by the plat filed by said commissioner on the date the same was established.

The defendant excepts to the giving of instruction No. 1, and this exception constitutes the first assignment of error. Commissioner Goff is now dead and likewise those who participated with him in making this survey. Therefore it is impossible to secure any parol evidence as to what Commissioner Goff actually did at the time he made the survey in question. Under these circumstances, the best evidence we have are the notes of the survey and the plat filed with the same. Even if it were competent in this proceeding to show that Commissioner Goff made a mistake in the location of the corner of lot No. 9 at "three beeches and hemlocks," we have no testimony from those present at the time the survey was made from which we can draw any inference other than that which appears in the notes of the survey and plat as respects the location of the corner of lot No. 9. Nevertheless it is insisted by counsel for the plaintiff that an inspection of the map discloses the fact that to locate the corner at this point would result in depriving it of a considerable number of acres, and also lessen the number of acres in certain other adjacent tracts. On the other hand, it is insisted by counsel for defendants that to establish the line at the point contended for by the plaintiff would deprive their clients of a considerable number of acres.

The plaintiff relies upon the case of Clement v. Packer, 125 U. S. 309, 8 Sup. Ct. 907, 31 L. Ed. 721. That was a case from the state of Pennsylvania, and the Supreme Court of the United States, among other things, said:

"* * * By an unbroken current of decisions in that state that the surveys constituting a block are not to be treated as separate and individual surveys, nor can each tract be located independently of the rest by its own individual lines or calls or courses and distances, but such tracts are to be located together as a block or one large tract. If lines and corners made for such a block of surveys can be found upon the ground, this fixes the location of the block, even to the disregard of the call for adjoiners. The lines and corners found upon any part of the block of surveys belong to each and every tract of the block, as much as they do to the particular tract which they adjoin."

The court then cites the case of Pruner v. Brisbin, 98 Pa. 202, in which Mr. Justice Sterrett, of the Supreme Court of Pennsylvania, said:

"The 13 tracts having been surveyed in a block and so returned must be located upon the ground as a block. Neither of them can be arbitrarily located in disregard of the lines and corners found upon other parts of the block. All the lines and corners marked upon the ground and returned must be considered in ascertaining the proper location of the block. Those found upon any part of the block belong to each and every tract of which it is composed, and, if sufficient lines and corners can be found, they determine the location of the entire block without regard to its calls for adjoiners or for waters, if such calls conflict with the lines actually run upon the ground and returned."

He added:

"It requires neither argument nor citation to show that the learned judge was clearly right in thus instructing the jury."

The Supreme Court based this decision solely upon the Pennsylvania law. It should also be remembered that in that case the outside lines and corners of the entire body of land, comprising the numerous subdivisions, were established, while in the case at bar the outside lines and corners of the De Wees 17,000-acre tract and the Smythe 22,104¼-acre tract are not given on the plat, nor were all the lines of the De Wees subdivision or the Smythe subdivision located by surveyor Taylor in the preparation of the map which was used in the trial of this case. Therefore, even if this case were governed by the Pennsylvania law, it would be impossible to reach a correct determination as to the true location of the various lines of the adjacent owners without having a complete survey of the outside lines as well as the lines of the various subdivisions. We fail to find any case, either in Virginia or West Virginia, wherein the rule laid down in the case of Clement v. Packer, supra, is approved by the courts of last resort of either of those states. It also appears that various other lots that were included in the division of the De Wees tract and the Smythe tract were sold to different individuals; and it further appears that some of the owners have been in actual possession of some of the lots a sufficient length of time to acquire title to the same. There is no means by which these people could be required to readjust their lines inasmuch as they have acquired perfect title to the lands within their boundaries, and, without adjusting such lines, it would be a physical impossibility to readjust the lines of the other lots so as to secure an equitable and fair division of the lands claimed by the holders of the same. This fact alone would be conclusive if this were a proceeding in a court of equity.

Now, that more than 67 years have elapsed since the establishment of these lines, and the parties interested having acquired title by peaceable possession to much of the land in controversy, it would be unjust and inequitable at this late date to undertake to readjust a portion of the lines, when, from the very nature of things, no court would have the power to readjust all the lines within the 17,000-acre tract.

The plaintiff cites Shaw v. Clements, 1 Call (Va.) 429, and a number of other cases to sustain the contention that "where it is shown that such mistakes as leaving out lines, putting in north for south and east for west are to be corrected" by parol evidence to the true intent of the parties. Those cases are easily distinguished from the case at bar. There it was held that such mistakes as leaving out lines, putting in north for south and east for west could be corrected. This is in accordance with the well-settled, and we might say universal, rule, but here we have a different state of facts. The report of the survey made and the plat filed by Commissioner Goff show that the lot in question has well-defined corners, and the beginning corner, as well as the various corners, are definitely referred to, and correspond exactly with the calls of the deed and are capable of being located. There is not a scintilla of parol evidence in the record to show that at the time Commissioner Goff made this survey he acted under a misapprehension, nor is there any evidence to show that lot No. 9 was improperly located. It is true that, when you come to run the lines of the various lots that were surveyed, it will be found that some of them contain a greater, and others a less, number of acres than called for in the notes of the survey. However, we should remember that at the time this survey was made land was not considered as valuable as now, and, owing to that fact, the question as to the exact number of acres was not considered as being of much importance at that time. Therefore any discrepancy in this respect is immaterial.

Under these circumstances, there is nothing in this case to justify the application of the rule announced in the case of Clement v. Packer, supra, and there is not anything on the face of the deed to indicate that a mistake was made, and there being no evidence to show that the location as shown by the plat and report of survey is not the true location of the tract of land in question, while, on the other hand, the surveyor had no difficulty in locating the calls of this tract as indicated by the plat. That course and distance must yield to the call for natural objects is so well established that it is hardly necessary to cite any authorities in support of such proposition. However, we will call attention to the case of Watkins v. King, 118 Fed. 524, 55 C. C. A. 290, in which Judge Goff, in speaking for the court, said:

"Under this settled rule that calls in a survey for natural objects must control both courses and distances, it is error for a court to charge a jury to ignore such calls as having been made through ignorance or mistake, and to be governed by courses and distances, because the objects called for are not to be found on the courses or at the distances called for, where there is evidence tending to show that the objects exist, and to identify them sufficiently to justify a finding that they were those seen and called for, by the surveyor, however much they may be at variance with the courses and distances called for; nor is such charge justified by the further fact that such a finding would make the quantity of land embraced within the survey much smaller than that stated."

In the case of Jones et al. v. Johnson, 18 How. 154–155, 15 L. Ed. 320, the court, in discussing this question, said:

"As we have seen, this lot No. 34 was conveyed to the plaintiffs the 22d October, 1835, and described as included within side lines dropped at right

angles from the northwest and northeast corners of Water street, which were 60 feet apart, and fixed and extended in right lines till they intersected the shore of the lake below. The boundaries, therefore, including and locating the lot were specific and complete. The north boundary was marked on the south side of Water street. The side lines extended, according to the plat, at right angles from Water street to the lake. The lake was the southern boundary which closed the lines of the lot. Now, in order to determine what land was conveyed to the plaintiff by this deed of 22d October, 1835, all that was necessary was to locate the lot upon the ground in conformity to the description at that date. The calls in the deed having reference to the plat furnished the necessary data for the location. There was the fixed line north on the ground, the lake, a natural object, south, and the lot inclosed between two lines extending at right angles from the corner from Water street to the lake."

Also in the case of Jones et al. v. Johnson, supra, 18 How. 153, 15 L. Ed. 320, the court said:

"If there was in fact any error or mistake in this reference, by way of description of the premises conveyed, the remedy was in chancery to reform the deed. So long as that remained unreformed, the description of the lot by reference to the recorded plat was conclusive upon the parties."

Counsel for plaintiff have filed with us a copy of an opinion rendered by the Supreme Court of West Virginia in the case of Mylius v. Raine-Andrew Lumber Company, — S. E. —,[1] but not reported as yet. We have carefully considered the facts of that case, and are of the opinion that they are wholly different from those of the case at bar. However, the first paragraph of the syllabus in that case is pertinent to the questions involved herein. It reads as follows:

"(1) In the trial of an action involving title to land, dependent upon the location of boundary lines and application of the title papers to their subject-matter, it is not error to instruct the jury that they must give controlling influence to lines and corners marked upon the ground and identified, in so far as the lines were actually surveyed, and to courses and distances, in these instances in which the lines were not actually surveyed nor marked upon the ground."

Thus it will be seen that the court held it was not error to instruct the jury that they must give controlling influence to lines and corners marked upon the ground and identified where the lines were actually surveyed. The rule thus stated is in conflict with the instructions given by the court below in its general charge to the jury to the effect that the jury could ignore lines and corner trees in determining the true location of the land in controversy.

Applying the rule as announced in Watkins v. King, supra, and the other cases to which we refer, there is not the slightest difficulty in surveying and ascertaining the true location of the lot in controversy. Where lands are conveyed with particular reference to a recorded plat, if there should be any error or mistake in the plat in describing the premises, the remedy is not in a court of law, but the proper remedy is in a court of equity to reform the deed, and, so long as the deed remains unreformed, the description of the lot by reference to the plat is conclusive upon the parties.

[1] Rehearing pending.

In the case of Prentice v. Stearns, 113 U. S. 435, 5 Sup. Ct. 547, 28 L. Ed. 1059, the second syllabus is in the following language:

"In a suit at law to recover possession of real estate, the court cannot take note of facts, which, in equity, might afford grounds for relieving the plaintiff, by reforming the description in his deed."

The plaintiff below took title to the timber standing on the lands described in the declaration with full knowledge of the calls contained in the deed upon which it relied.

It had ample opportunity to investigate the title under which its grantors held and it is fair to assume that such investigation was made. An investigation of this title shows that the beginning corner of lot No. 9 is at "three beeches and hemlocks," and that the boundary lines are clearly set forth, and this would enable one to go upon the ground and locate the lot in controversy. Having purchased this land under these circumstances, with the means of ascertaining full knowledge as to all the facts surrounding the location of the same, the plaintiff cannot now be heard to say that it was misled as to the true location of lot No. 9, nor would a court of equity, under such circumstances, undertake to reform a deed thus made, the plaintiff being estopped by its conduct from denying the location of the lot to be as indicated in the notes of the survey and the plat filed by Commissioner Goff. In the case of Murray et ux. v. Paquin, 173 Fed. 328, the court said:

"But there is an additional reason against the complainant's right to relief in this case, and it grows out of the fact that the record shows that they had the same opportunity the defendant had for getting the true facts, but failed to avail themselves of the information which was readily at hand. They were furnished defendant's deed to the property and the chain of title for their examination. They placed the examination of title in the hands of competent attorneys, and altogether could have known, just as well as the defendant could have known, everything about the lot and its proper and true boundaries. The authorities are uniform to the effect, that, this being true, they are not entitled to relief in a court of equity."

"In Crowder v. Langdon, 38 N. C. 486, the rule on this subject is stated in this way: ' * * * The general rule unquestionably is that an act done or a contract made under a mistake or ignorance of a material fact is relievable in equity. 1 Story, Equity, 155. But where the means of information are alike open to both parties, and when each is presumed to exercise his own judgment in regard to extrinsic matters, equity will not relieve. The policy of the law is to administer relief to the vigilant, and put all parties to the exercise of a proper diligence. In like manner' where the fact is equally known to both parties, or where each has equal and adequate means of information, or when the fact is doubtful from its own nature, in any such case, if the party has acted with entire good faith, a court of equity will not interpose. 1 Fond. Eq. bk. 1, c. 2, § 7, note "v"; 1 Pow. on Com. 200; 1 Mad. Ch. Pr. 62, 4; 1 Story, Eq. 163.' * * * "

In Farnsworth v. Duffner, 112 U. S. 47, 12 Sup. Ct. 165, 35 L. Ed. 931, in the opinion of Mr. Justice Brewer, the proper rule on this subject is stated in this language:

"This is a suit for the rescission of a contract of purchase, and to recover the moneys paid thereon, on the ground that it was induced by the false and fraudulent representations of the vendors. In respect to such an action it has been laid down by many authorities that, when the means of knowledge respecting the matters falsely represented are equally open to purchaser and vendor, the former is charged with knowledge of all that by the use of such

means he could have ascertained. In Slaughter, Administrator, v. Gerson, 13 Wall. 379, 383, 20 L. Ed. 627, the court said: 'Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained.' See, also, Southern Development Company v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246. In Ludington v. Renick, 7 W. Va. 273, it was held that 'a party seeking a rescission of a contract, on the ground of misrepresentations, must establish the same by clear and irrefragable evidence; and if it appears that he has resorted to the proper means of verification, so as to show that he in fact relied upon his own inquiries, or if the means of investigation and verification were at hand, and his attention drawn to them, relief will be denied.' In the case of Atwood v. Small, decided by the House of Lords, and reported in 6 Cl. & Finn. 232, 233, it is said that 'if a purchaser, choosing to judge for himself, does not avail himself of the knowledge or the means of knowledge open to him or to his agents, he cannot be heard to say that he was deceived by the vendor's representations.' And in Pomeroy's Equity Jurisprudence, § 892, it is declared that a party is not justified in relying upon representations made to him * * * '(1) when, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement; (2) when, having the opportunity of making such examination, he is charged with the knowledge he necessarily would have obtained if he had prosecuted it with diligence; (3) when, the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge possessed by both parties.' "

In Shappirio v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419, in the opinion of Mr. Justice Day, this is said on this subject:

"When the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor. Slaughter, Administrator, v. Gerson, 13 Wall. 379, 20 L. Ed. 627; Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246; Farnsworth v. Duffner, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931."

The plaintiff purchased this land with full knowledge of the facts, and it certainly cannot claim any more than was shown to be the property of the vendor by an inspection of his title.

The beginning corner of lot No. 9 is in these words:

"Beginning at three beeches and hemlocks, known as the 'Flint Corner.' "

It appears from the evidence that this corner is capable of being located. If the reference to the beginning corner had been vague and indefinite or the calls in the deed irreconcilable, parol evidence, in a proper proceeding instituted within a reasonable time after the establishment of the same, would have been competent to show the true location of the same, but there is not the slightest suggestion by allegation or proof that this corner could not be definitely located. The

owners of the adjacent lots are not parties to this action, nor is there anything contained in the pleadings or shown by the proof as to what occurred at the time this survey was made to indicate that Commissioner Goff made a mistake. And, as we have said, it appears that some of the owners of the adjacent lots have acquired perfect titles within their boundary lines, and, under these circumstances, even though it were proper in a proceeding at law to grant the relief sought, the plaintiff would not be entitled to recover.

In view of these circumstances we are of opinion that the court erred in submitting instruction No. 1. There are a number of assignments of error, but the first assignment goes to the root of the whole matter, and, being of the opinion that there was error in submitting instruction No. 1, it necessarily follows that the court erred in submitting instructions Nos. 1, 2, 3, 4, 5, and 6, but we do not deem it necessary to discuss the matters involved in these instructions, inasmuch as what we have said with respect to instruction No. 1 also applies to the questions involved in the other instructions.

For the reasons stated, the judgment of the lower court is reversed, the verdict of the jury set aside, and the case remanded for further proceedings in conformity with the views herein expressed.

Reversed.