MISSOURI PHONOGRAPH CO. v. TOMLINSON et al.

(Circuit Court of Appeals, Second Circuit.   January 16, 1918.)

No. 109.

FRAUD ☞20—ACTION FOR DECEIT—GROUNDS.

> To maintain an action for deceit, the fraud alleged must have been perpetrated by defendants and must have actually deceived plaintiff.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Missouri Phonograph Company against John C. Tomlinson and Millard F. Tompkins.   Judgment for defendants, and plaintiff brings error.   Affirmed.

Before the occurrences directly involved in this suit, and about 1890, numerous corporations were formed in divers parts of the United States for the purpose of exploiting the phonograph, then still a novelty.   These companies were severally territorial licensees under certain patents, and the exclusive territory of each corporation was usually one state.   The plaintiff here and below is such a corporation, and another was the New York Phonograph Company.   They did not flourish, for reasons immaterial to this suit, and all seem to have gone out of business; certainly this plaintiff did, and so did the corresponding New York concern.   But the use of phonographs and trade in them did not diminish, and some time prior to 1900 one Andem and others conceived the idea that the National Phonograph Company, and other persons and corporations ·interested in or affiliated with that company, were unjustly and unlawfully enjoying in the several states covered by the territorial licenses aforesaid the profits derived from phonograph sales.

Andem then procured powers of attorney from many of these local and discouraged, if not financially defunct, corporations, under which he was authorized to begin and prosecute, in the name (among others) of the Missouri and New York Phonograph Companies, such suits for the establishment of their respective rights as he might be advised, but at his own expense, and to terminate, settle, and compromise such suits and give releases on behalf of his principals as and when he thought best, provided, however (in the case of the Missouri Company), that.he did not settle for less than $40,000.   Andem began numerous actions.   It does not appear whether the rights of all Andem's plaintiffs were the same or rested on identical legal principles; it is so alleged (in substance) in the complaint, was denied in the answer, and not proven at the trial.   The case of the New York Phonograph Company was most vigorously pressed, and its history is recorded at large in the reports. (C. C.) 112 Fed. 822; (C. C.) 119 Fed. 544; (C. C.) 136 Fed. 600; 144 Fed. 404, 75 C. C. A. 382; (C. C.) 163 Fed. 534.

In 1909 the persons and corporations who were defendants in all of Andem's suits offered settlement, and by a written agreement Andem on behalf of all the companies that he represented (including of course this plaintiff) received $405,000, discontinued all his actions (including that in the name of this plaintiff), and covenanted to give a general release for the New York Phonograph Company executed by that company itself, and a general release on behalf of other plaintiffs (including Missouri Company) executed by himself. Andem's release on behalf of the Missouri Company was clearly invalid, unless he allotted to that corporation, out of the moneys by him received, at least $40,000, subject to payment of his interest (established in his power of attorney) of 60 per cent., or procured from Missouri Company a general release, either to the defendants or to Andem himself, for a smaller sum.   After the $405,000 aforesaid had been secured to Andem, the defendants herein, who are members of the bar and had with other counsel pressed the cases aforesaid, wrote (on April 22, 1909) the following letter to Missouri Phonograph Company:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Mr. Andem has requested us to inform the various local phonograph companies in regard to the settlement affected through us as counsel for the New York Phonograph Company, in their suit against the National Phonograph Company. This litigation has been in the courts, with varied success, for a number of years, and was finally settled. Mr. Andem, as a feature of the settlement, succeeded in compelling a recognition of the claims of seven local companies which had authorized Mr. Andem to represent them. None of these companies, in our opinion, would have been able to successfully prosecute any claim against the National Phonograph Company, or Mr. Edison, as they were not in the same position as the New York Company. But, following Mr. Andem's instructions, we insisted upon some recognition by the Edison interests of the rights of the outside local companies, before consenting to a settlement of the New York cases, and finally, after a most earnest effort, we compelled the payment of $50,000 on their behalf. After deducting Mr. Andem's percentages, there remains $20,000 for distribution among these seven local companies, and Mr. Andem desires us to inform you that, as soon as instructions are received as to whom this money should be paid over, this amount will be distributed in proper proportions to the several companies concerned."

For all purposes of settlement with Andem or with the National Phonograph Company et al., one Clancy was the Missouri Phonograph Company. He received this letter of defendants, and saw also a sort of circular letter sent out by Andem himself to all his principals (other than New York Phonograph Company), in which he gave some history of the New York Company's litigation, said that he had finally settled that case alone for $375,000, pointed out that in his opinion the other corporations represented by him had not the same grounds for successful suit as had New York Company, and stated that he had compelled, as a sort of pendent to the New York Company's settlement, delivery to him of $50,000 to cover all the other plaintiffs on whose behalf he had sued. He specifically admitted that in the case of several plaintiffs (including Missouri Company) he had exceeded his authority, but in order to get anything had been compelled "to ignore those requirements," and concluded by inviting (among others) Missouri Company to accept an allotment out of said $50,000.

This brought Clancy to New York, and he "talked the matter over" with Andem, and went to defendant's office and talked with some members of the firm; but he exhausted memory of that interview by saying he was told "that they had had a difficult time in getting any money for" plaintiffs such as Missouri Company, meaning apparently all Andem's plaintiffs except New York Phonograph Company. Subsequently and in August, 1909, Missouri Company formally released Andem in consideration of $2,177, or (apparently) 40 per cent. of $5,000, with some accumulations of interest. A year or more later Clancy discovered that the written agreement of settlement between the parties whom Andem had sued so frequently and Andem himself had not specified or declared in any way how the $405,000 paid was allotted or should be distributed, whereupon this action was brought, alleging in substance that Andem had received (by receipt of said large sum of money) at least $40,000 for the settlement of Missouri Company's suit, therefore he owed plaintiff 40 per cent. thereof, or $16,000, and that the settlement aforesaid between Andem and plaintiff had been produced by the fraud and deceit of Andem and his counsel, viz., the present defendants.

Andem was made a party defendant herein, but no service was effected. As to one member of the defendant firm the complaint was dismissed, on behalf of the others a verdict was directed at the close of plaintiff's case, and to the judgment entered accordingly plaintiff took this writ.

Carroll Sprigg, of New York City (Charles E. Le Barbier, of New York City, of counsel), for plaintiff in error.

Guthrie, Bangs & Van Sinderen, of New York City (Francis S. Bangs, of New York City, of counsel), for defendants in error.

·Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). This action is not against Andem; it must stand or fall as against his counsel; and it rests on alleged deceit, concerning which the general principles have been sufficiently stated in Farrar v. Churchill, 135 U. S. 615, 10 Sup. Ct. 771, 34 L. Ed. 246. We have pointed out in Varley, etc., Co. v. Ostheimer, 159 Fed. 657, 86 C. C. A. at 525, that in such suits "fraud is alleged and must be proved; fraud involves deception; if the plaintiffs were not deceived, they cannot recover"; and, it may be added, there can be no recovery if the plaintiffs were not deceived by the defendants whom they sue.

Upon the trial below the deception relied on, the reason for suit, was stated thus by Clancy when on the witness stand—that he had relied on Andem's letter, and that Andem had made a false statement as to the terms of settlement in that letter, because "I [Clancy] have learned since that the [settling defendants] did not designate the companies as to the amount they should have." This means that he had never ·been informed that the written settlement agreement with Andem did not allocate the amount to be paid as between all the plaintiffs in the various suits pending and to be discontinued.

But by his circular letter Andem had stated what New York Company was getting, and told all his other principals that he had exceeded his authority, in that he had in fact settled all the suits, except that of the New York Phonograph Company, for $50,000; he admitted that he had no right to give a release for the Missouri Company for less than $40,000, and then Clancy came to New York to investigate the matter, saw and talked with Andem, and settled on the basis that Andem suggested. But Andem's powers undoubtedly extended to complete control of the suits that ·he had brought; he could press them or abandon them as he saw fit, though doubtless he remained responsible for abuse of his authority; but with him we are not concerned, otherwise than to note that he boldly said he had settled all the suits, except that of New York Company, for $50,000, and that he had perfect right to do this, so far as the parties he sued were concerned.

In this situation, the present plaintiff was at liberty to go on, and sue as best it could, either Andem for fraud, or money had and received, or the original defendants on the original causes of action; but we wholly fail to see that, under the circumstances shown, anything contained in counsel's letter was untrue, or that any duty lay upon them to state just how much Andem was allocating to the New York Company, or any other party in interest, or that the plaintiff in this case relied to its disadvantage upon anything that these defendants wrote or said. The language of their letter, and their talk as related by Clancy, amount to this; that it had been hard work to force any settlement, and difficult to get anything for the companies in the position of this plaintiff. There is nothing in this record to impugn

the truth of these statements, and the reports above noted, which any one may read, certainly substantiate one part thereof.

Judgment affirmed, with costs.