CHANDLER v. FRANKLIN.

FRANKLIN v. GARDNER.

1. SPECIFIC PERFORMANCE.—Contract for purchase of land by payment of part of purchase money to agent of owner and receipt therefor, and putting in possession by agent after notice of sale by owner to another, agent having no authority to accept money and to put in possession, does not make up a contract of sale.

2. ISSUES OF LAW—TRIAL BY JUDGE.—An order consolidating two causes, one for possession of land, the other to enjoin this and for specific performance, and referring issues, unappealed from, is the law of the case, and Judge properly tried issues of law and fact in both cases.

Before HUDSON, special J., Sumter, December, 1901. Affirmed.

From Circuit decree, defendant, in first case, plaintiff in second, appeals.

*Messrs. A. B. Stuckey* and *Cooper & Fraser,* for appellant, cite: *Statute of frauds should be pleaded:* 61 S. C., 393; 28 S. C., 175; 8 Ency., 715; 7 Ency., 2 ed., 125. *Several papers may be taken together to make up a contract:* 8 Ency., 712, 718, 719; 48 S. C., 507. *What acts will take case out of statute of frauds:* 21 S. C., 480; 9 Ency., 161, 162. *Party cannot change his case from that made by pleadings:* 21 S. C., 221, 242; 11 Ency. P. & P., 864; Black on Judg., sec. 242. *Deed must be accepted to complete contract:* 9 Ency., 162; 4 Green. Cruise Dig. (ed. 1850), 12; Broom's Leg. Mat. (7 Am. ed.), 128; 9 Ency., 2 ed., 161. *Judge could not try issues for jury only:* 36 S. C., 500.

*Messrs. L. D. Jennings* and *Purdy & Reynolds,* contra. The former cites: *What is specific performance and what entitles party thereto:* 5 S. C., 462; 53 S.C., 563. *If contract is in writing, it must contain all the material terms:* 13 Rich.

Eq., 257; 27 S. C., 363. *What is necessary to take case out of statute of frauds:* 39 S. C., 367; 3 Pom. Eq. Jr., sec. 1409; 8 Ency., 742, 743; 52 Md., 698; 67 Ia., 202. *How contract for specific performance must be shown:* 21 S. C., 119. *Specific performance will not be compelled after title is parted with:* 53 S. C., 574.

April 4, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The first named action is the ordinary action to recover possession of a tract of seven acres of land, situate near Sumter, S. C. The second named action is one in equity, whereby the plaintiff seeks the aid of the Court to require the cancellation of a deed made by the defendant, Gardner, to his codefendant, Chandler, on the 10th day of November, 1900, for the seven acres of land, which it is the object of the first suit to recover, relying upon the said deed made on 10th November, 1900, and then afterwards that the defendant, James W. Gardner, be required to specifically perform the contract for the purchase by the plaintiff, Jackson, of the seven acres of land, which contract was made by Gardner's agent, the defendant, Hogan. Amid these distracting claims, Judge Watts passed an order by which the plaintiff in the first suit was enjoined from proceeding in the first named action until the determination of the second action, but he provided that the two aforesaid actions should be consolidated and that it be referred to the master for Sumter County to take the testimony and report the same to this Court. From this order no appeal was ever taken. The consolidated actions came on to be tried upon the pleadings and the testimony reported by the said master before the Hon. J. H. Hudson as special Judge, who thereafter pronounced the following decree:

"These cases came on for trial before me at the special term of Court for Sumter County, on the 18th day of December, 1901, and were fully argued before me by A. B. Stuckey, Esq., and Cooper & Fraser, for Samuel Franklin,

35—65

and L. D. Jennings, Esq., and R. O. Purdy, Esq., for Thomas Duncan Chandler.

"In the first case, Thomas Duncan Chandler commenced his action against Samuel Franklin for the recovery of the possession of the parcel of land in dispute. Pending the hearing of this case, the second case was brought by Samuel Franklin against James E. Gardner, Thomas Duncan Chandler and Eugene Hogan. The object of the second action was to enforce specific performance as against James E. Gardner and Thomas Duncan Chandler as to the said parcel of land under an agreement said to have been made with Gardner through his alleged agent, Hogan. Hogan was also made a party defendant, and appeared and filed an answer by himself, but the defendant, Gardner, has not appeared. His Honor, Judge R. C. Watts, enjoined Chandler from proceeding in his first action, and ordered that both cases be consolidated by his order, dated April 12th, 1901, and made an order of reference to the master to take the testimony. The cases came on to be heard upon the testimony reported by the master and the pleadings and proceedings in the case, from which I find as matters of fact:

"That while Franklin sets up in his complaint that there was a written contract in his favor for the purchase of the parcel of land referred to, made by him with Gardner through Hogan, no such contract was produced or appears to have been in existence, but that he relies on a receipt taken by him from Hogan, dated November 3d, 1900, and the letters from Gardner to Hogan, dated June 25th, 1900, and October 23d, 1900, respectively, to sustain such allegation. But if these together could be termed a contract, the receipt was not given until after Chandler had completed and closed the trade for the said parcel of land with Gardner by letter or letters.

"I further find that Gardner had made, executed and delivered his deed to the said parcel of land to Chandler before Franklin took possession of the premises, and I also find that before Franklin took the receipt from Hogan—which receipt

I find was the result of his negotiations with Hogan for the purchase of the land—that he, Franklin, had full notice that Chandler had already closed the trade with Gardner for the land.

"I further find that Gardner had no knowledge of any attempted sale to Franklin before the close of the trade with Chandler, and that Chandler had closed the trade with Gardner before he had any knowledge of Franklin's proposed purchase of the premises from Gardner through Hogan.

"I further find that before the commencement of the action of Franklin against Chandler and others, that title had passed out of Gardner to Chandler, which fact was known to Franklin; and I further find that before Franklin took possession of the premises the deed to Chandler had been made, executed and delivered by Gardner.

"I, therefore, conclude, as a matter of law, that Samuel Franklin is not entitled to specific performance, and it is ordered and adjudged, that the complaint against Thomas Duncan Chandler and others be, and the same is hereby, dismissed with costs.

"The attorneys for Chandler filed a demurrer to the complaint of Franklin, and also moved to dismiss it, upon grounds stated in the demurrer and motion; but I concluded that it was better to hear argument on the whole case, and having done so, and having considered the case, and having decided to dismiss it upon the grounds above set forth, I have deemed it unnecessary to formally pass upon the demurrer and motion to dismiss; as the question raised in these matters largely involved matters affecting the merits of the case.

"This necessarily brings us to consider the first case of Chandler against Franklin, and, from the terms of the order, this comes up to be heard before me, sitting as Judge and jury; and from the conclusions already announced it necessarily follows that Chandler is entitled to recover the possession of the premises referred to, and I, therefore, find and

adjudge that he is entitled to judgment accordingly, and leave is hereby given him to enter up same with costs."

Samuel Franklin, styled as plaintiff in one of the cases above stated, and as defendant in the other, excepts to the decree of his Honor, J. H. Hudson, special Judge herein, as follows:

"I. Because his Honor erred in not finding as matter of fact that Samuel Franklin obtained a valid contract in writing for the purchase of the land in question from James E. Gardner through Eugene Hogan, Gardner's agent, by and through the receipt of Eugene Hogan, as such agent, of date November 3, 1900, and the letters of Gardner to Hogan, of dates June 25th, 1900, and October 23d, 1900, and that such contract was prior to any contract of purchase of the land by Thomas Duncan Chandler.

"II. Because his Honor erred in finding as matter of fact that if the letters by Gardner to Hogan, one of June 25th, 1900, and one of October 23, 1900, and the receipt of Hogan to Franklin of November 3d, 1900, 'could be termed a contract, the receipt was not given until after Chandler had closed a trade with Gardner by letter or letters.' (a) In that the greater weight of the evidence shows that there was no such contract or trade by Chandler with Gardner, for the land by letter or letters. (b) In that if as matter of fact there had been such contract, same was subsequently annulled by a new contract between Chandler and Gardner, under which Chandler obtained his deed upon new terms and a different consideration, evidenced by the deed itself and the telegrams which passed between these two persons in evidence herein. (c) In that if, as matter of fact, there had been such contract of purchase as thus stated in the decree, his Honor erred in not further finding as matter of fact that Franklin entered into his contract of purchase without notice of any purchase by Chandler, and his Honor erred in not finding and adjudging as matter of law thereon, that Gardner having made it possible for Hogan to sell as his agent and bind him, and Hogan having made a sale, received

part of the purchase money and placed the purchaser in possession without notice of such alleged contract of sale to Chandler, that such contract is entitled to be enforced in preference to establishing the alleged contract of sale made by Gardner, as principal, to Chandler, where no purchase money was paid and no possession given. (d) And his Honor further erred in establishing such alleged contract of sale to Chandler by letter or letters in this case, while the said Chandler by his pleadings in the cause, relied only upon his deed from Gardner, set up in his complaint in the one case and his answer in the other case, there having been no amendment of the pleadings, and no attempt to do so. (e) His Honor should have held, and erred in not holding, that said Chandler, having by his pleadings, both in his complaint in one case and his answer in the other, stood upon his legal rights alone, and interposed no plea of any equitable right to specific performance of a contract superior to the rights and equities of Franklin, was thereby not entitled to any decree for specific performance of such alleged contract or the establishment of a deed executed in pursuance thereof, such deed being subsequent to the date of the contract of Franklin. (f) His Honor should have further held that the counsel of Chandler having for the first time in their argument before him taken the position that Chandler was entitled to an equity for the establishment of his deed because of its being executed as the performance of a contract anterior to the date of the contract of Franklin, that the objections to the same there urged and argued by the counsel of Franklin was due and timely; that such alleged contract could not be enforced or established, because (1) same had not been pleaded, (2) because same did not conform to the requirements of the statute of frauds, in that the contents of the alleged letter or letters by Chandler was not proven, and in that no definite description of the land was shown either by letter or letters or telegrams passing between Gardner and Chandler.

"III. Because his Honor erred in finding as a fact that

Gardner had made, executed and delivered his deed to the said parcel of land to Chandler before Franklin took possession of the premises; whereas, it sufficiently appears that Chandler being in Sumter and the deed having been signed in Missouri on the 10th of November, it was a physical impossibility for the deed to have been transmitted and delivered before the 12th of November, the date when possession was given to Franklin. And his Honor should have so found, and should have further held that where the rights of a third party intervenes as in this case, the time of the actual delivery of that deed was the time and delivery, and not the date of signing the same.

"IV. Because his Honor erred in finding as matter of fact that before Franklin took his receipt of November the 3d, that he had full notice that Chandler had already closed the trade with Gardner for the land, there being no evidence upon which such finding could have been made.

"V. Because his Honor erred in finding as matter of fact that before Franklin took possession of the premises, the deed to Chandler had been made, executed and delivered by Gardner evidently finding thereby that the deed was delivered on day of its date, which was not in fact delivered for several days thereafter and after the 12th of November, date of Franklin's possession, according to the greater weight of the evidence.

"VI. Because his Honor erred in adjudging and decreeing that Samuel Franklin is not entitled to the specific performance and in dismissing the complaint; whereas, as matter of fact, he should have found that Samuel Franklin entered into a valid contract of purchase of the premises before the alleged purchase by Chandler, in compliance with the requirement of the statute of frauds, and that whether such compliance was shown or not, that there was such part performance of the contract with Franklin as would take the case out of the statute, and which would give Franklin equities and rights superior to those of Chandler and entitle Franklin to a decree for specific performance, and his Honor

should have so decreed and should have required Chandler to convey the premises to Franklin upon payment by the latter of the balance due by him as the purchase money.

"VII. Because his Honor erred in holding that in the trial of said cause he was sitting as Judge and jury and in rendering final judgment upon the issues properly triable before a jury in said cause."

The duty now devolves upon us to pass upon these exceptions.

1. Stript of words and phrases, appellant's contention that he obtained a prior right to that of Chandler, cannot be sustained. The fact is that Chandler began his trade with Gardner before Hogan ever dreamed of becoming the agent of Gardner to sell the seven acres; for on the 20th March, 1900, Gardner wrote to T. D. Chandler as follows:

"Tremont, Mo., March 20, 1900. Mr. T. D. Chandler— Dear Sir: Your note just received. It was sent to the wrong office; very sorry it has been delayed, but hope you haven't given me out writing to you in answer to your proposition. Yes, if you will settle Hogan's debt and pay me $150 the first of October, with eight per cent. interest from the first of March when Harby's claim is settled, the claim will be perfect, have deed prepared and send to me and I will sign, acknowledge and return the same to you in return for your note. I mean negotiable note, one that discount it in bank. If wish to do so please let me hear from you soon. Yours very respectfully, James E. Gardner."

Whereas, Hogan's first letter from Gardner was dated 26th June, 1900, as follows:

"Tremont, Mo., June 25th, 1900. Mr. Eugene Hogan, Sumter, S. C.—Dear Sir: Your welcome letter received some time ago, it found us all well, was indeed glad to hear that you were all in usual health, would have written you sooner but had a letter from Mr. Chandler saying that he wished to buy the place, he has written me several times about it. I made him a proposition and he wrote me he

would take the place at my price and afterwards went back on it. I offered him the place for $150.00. I think that is entirely too cheap, but if I had the money now I could invest it to a big advantage now. I will give you all over that amount you can get out of it after paying Harby's debt if you sell or cause me to make sale of it. I think that if you will talk the matter up so Mr. C. can get hold of it that he will pay a fair price for it. I will close hoping to hear from you soon, I remain yours very respectfully, Jas. E. Gardner."

Now, so far as the record shows, there was nothing which passed from Hogan to Gardner showing an acceptance by Hogan of this agency offered by Gardner to him until some time in the month of October, 1900, as shown by this telegram: "October 24, 1900. James E. Gardner, Tremont, Mo.: I believe I have sold your land, will write. Eugene Hogan."

Now, it must be noted that if Hogan as agent sold this seven acres of land as the agent of Gardner to Samuel Franklin, the appellant, he must have relied upon the letter of Gardner, dated the 25th June, 1900, and did not rely upon the letter of Gardner to him, Hogan, dated the 23d day of October, 1900. Every witness states that it takes at least two whole days for a letter to come from Missouri to Sumter, S. C. So it must have been as we stated, as only *one* day elapses between Gardner's letter to Hogan and Hogan's telegram to Gardner. The letter referred to is as follows:

"Tremont, Mo., October 23, 1900. Mr. Eugene Hogan, Sumter, S. C.—Dear Sir: I received a letter a few days ago from H. Harby, he said he was going to foreclose his mortgage soon unless he gets the money, he also said that there was a man who wanted the place, but he only wanted to pay me $125.00 and assume the payment of his debt. I think it was T. D. C., though he did not say. I believe they are working together to try to get the place for less than it is worth. I want you to help me to sell to some one else so as to defeat them. Do your best to sell it at once. What has become of Briggs Bros., and Charley Muller. Where is

Edmund, is he in the Philippines, or did he ever go; I hope he never went, for I do think that is a cruel war uncalled for and without cause.    Hoping to hear from you soon.    This leaves all well, wishing you and yours the same and much success, I remain, very respectfully, Jas. E. Gardner."

Now, on the very same day that Gardner wrote the foregoing letter to Eugene Hogan, he wrote the following letter to T. D. Chandler:

"Tremont, Mo., October 23, 1900.    Mr. T. D. Chandler— Dear Sir: Yours of the 20th to hand, will say in reply that I have not authorized Mr. Hogan to sell that piece of land for me, he wrote me about it and I wrote him that it was for sale. I also told him that if I sold it, that a check must accompany the deed, then I would sign and return deed.    If you want the place you can have it.    If you will take it at once for $150.00, without me having to make any settlement with Harby, so if you accept my proposition fill out deed and send to me at once, will sign and return same at once. Yours respectfully, Jas. E. Gardner."

No letter of Hogan to Gardner appears in the record after this.    We assume, however, that the letter of A. B. Stuckey, Esq., which was dated the 30th, but mailed on 31st of October, 1900, was the letter referred to by Eugene Hogan in his dispatch to Gardner on the 24th October, 1900, hereinbefore recited.    This letter of Mr. Stuckey was as follows: "October 30, 1900.    Mr. James E. Gardner, Tremont, Mo.—Dear Sir: Enclosed please find a deed to be executed by you to the Hogan lot.    Mr. Harby says he will give us a few days to settle up with him.    So in accordance with the proposal in your letter to Mr. Hogan of June last to give him all he can make out of it above $150.00 to be paid you and above the debt held by Mr. Harby.    Mr. Hogan has bargained to sell provided it can be wound up right away. So please don't delay and to make yourself safe, you send the deed to Bank of Sumter and instruct them not to deliver till payment of $150.000 to be returned by bank to you.    I suggest this as a safe way to transact the matter.    Now,

please bear in mind that the deed must be executed and probated in accordance *with our law here* and *not* the laws of Mo. There must be two subscribing witnesses to your deed. One of these witnesses must appear before your clerk of some Court of record, and then and there sign the probate. So, too, have your wife appear before the clerk of Court. Now, our law does provide that a notary using his seal may do for both above provided he affix thereto the cert. of the clerk of Court as to his official character, but the surest and best plan is for you and wife to go to the clerk's office and there have the paper with witness executed. Please do not delay, as this party may back out. Yours very truly, A. B. Stuckey."

To go back for a moment. We wish to call attention to the fact that Gardner's letter of the 23d October, 1900, to T. D. Chandler only reached the latter through the mails on the 25th or 26th of October, 1900. He, Chandler, replied to it by telegram on 2d November, 1900, as follows: "Sumter, S. C., Nov. 2d, 1900. To James E. Gardner, Bolivar, Mo., via Bolivar Station, Mo. I accept your offer for land. Don't sign deed sent for negro. I will forward deed to myself. Answer. (Signed) T. D. Chandler."

On the next day, the 3d November, 1900, Gardner telegraphed as follows: "Bolivar Station, Mo., Nov. 3, 1900. T. D. Chandler, Sumter, S. C. Message received. Send deed with check. One hundred and seventy-two dollars. Will sign return. Jas. E. Gardner."

On the same day, 3d November, 1900, T. D. Chandler sent the following: "II. 3, 1900. To James E. Gardner, Bolivar Station, Mo. New York exchange and deed sent to Polk County Bank. Accept. (Signed) T. D. Chandler."

On the 10th day of November, 1900, James E. Gardner. executed his deed conveying the seven acres of land to Thomas Duncan Chandler, which was placed on record by the latter.

Now we will return to Samuel Franklin. On the 31st October, his attorney sent on the deed to the seven acres of

land to James Gardner, conveying the seven acres of land to said Samuel Franklin.    On the 8th November, 1900, James Gardner returned said deed, refusing to sign the same on the ground that he had *already* sold the land to Chandler.    But on the 3d day of November, the said Samuel Franklin paid to Eugene Hogan the sum of $5 and took the following receipt:

"November 3, 1900.    Received Sumter, S. C., November 3d, 1900, of Samuel Franklin, five dollars in part payment of the lot of land of seven acres owned by James E. Gardner, on the road from Sumter to Stateburg adjoining the lands of T. D. Chandler and others—the power to sell the same having been given to me by said J. E. Gardner by his letters to me, one dated June 25th, 1900, and the other dated October 23d, 1900.    The terms of sale are for cash, the price being four hundred and fifty dollars, including therein the mortgage debt over the land now held or controlled by Horace Harby.    Eugene Hogan."

We are now prepared to answer this question, and we hold that there was no contract between Franklin and Gardner.    It is evident that such was the opinion of Eugene Hogan, the agent, and Mr. A. B. Stuckey.    The former said in his telegram, "I believe I have sold your land," the latter said in his letter to Gardner, dated 30th October, 1900, "Please do not delay this as the party may back out."    If Samuel Franklin had made a binding contract, where was there any evidence in writing signed by himself or any lawfully empowered agent.    If Samuel Franklin had himself made no contract, how can it be said that James E. Gardner had made such a contract with Franklin.    But it is suggested that Chandler had changed the contract contemplated by Gardner in his letter of the 23d October, 1900.    Look back at the first letter of Gardner to Chandler of 20th March, 1900, and you will see what was in the minds of Gardner and Chandler, to wit: Says Gardner, "If you will close this contract with a negotiable note payable at 1 October next, I will let you have the land at

$150 plus the payment of Harby's mortgage, plus the interest on $450 at eight per cent. for seven and one-third months, which interest amounts to $22." The trade was not consummated by the negotiable note due 1st October, 1900, but was on the same principle. consummated on the 2d of November, 1900. This exception is overruled.

2. We think the Circuit Judge was correct. You might call the letters of 25th June, 1900, and 23d October, 1900, and the receipt of $5 by Hogan, a contract, but it was not a contract. Certainly the minds of Chandler and Gardner met and the contract between them was carried into execution.

(a) The letters and telegrams between Chandler and Gardner certainly showed a contract between them. I will take so much; I will give so much. Deed and money sent and accepted. Deed returned fully signed. We would call it a fully consummated contract for a valuable consideration.

(b) The new contract here referred to is fully explained by going back to the letter of 20th March, 1900, from Gardner to Chandler, and to the letter of 25th June, 1900, from Gardner to Hogan, when he says Chandler had agreed to his terms.

(c) Certainly when the receipt for $5 was given by Hogan on the 3d day of November, 1900, his attorney, Mr. Stuckey, knew that Mr. Chandler was after this land as a purchaser, or why else did he labor so earnestly to have him not interfere on the evening of the 2d November, 1900. So far as the delivery of possession of the seven acres to Franklin by Hogan, it was an idle act. Hogan possessed the keys to the house on Gardner's land without his knowledge, and, furthermore, he had no authority from his principal to treat with Franklin as to the matter of possession. His authority to act for his alleged principal as to this matter, rendered each of such actions a nullity in the eyes of the law and equity. An agent acts at his peril in anything beyond the scope of his agency.

(d) When Gardner ratified his promises to Chandler by making his deed for the seven acres of land, he put it beyond

his power to recall said deed, if he had attempted to do so, which fact he has ever since recognized. As witness his return of the proposed deed to Mr. Stuckey without his signature, for the reason that he had already sold the land by contract to T. D. Chandler.

(e) T. D. Chandler needed no other doctrine in the law but to show that he had a deed from Gardner for the land, and that he had paid a valuable consideration therefor. It remained for Franklin to successfully impeach that consummated transaction between Gardner and Chandler.

(f) Nor did Chandler fail in replying to the charges of Franklin. If Chandler was not answerable for any failure in the equities attempted to be set up by Franklin, his claim was prior in point of time to that of Franklin, and we have already shown that Franklin had no valid contract that he was entitled to set up either against Gardner or against Chandler.

3. There can be no question that under the contract between Chandler and Gardner, when Chandler paid the consideration and sent the deed to Gardner for execution, such deed operated in his favor from the very date of its execution, which was anterior to the attempted possession of the land by Franklin, the appellant. This exception is overruled.

4. In view of the facts, we cannot hold that the Judge made any mistake in this finding. The very letter shown by Hogan to Mr. Stuckey while he was investigating his client's rights showed that Mr. Chandler was seeking a title, and on the 2d day of November, 1900, Mr. Chandler refused to cease opposing Franklin's title. This exception is overruled.

5. Franklin had no right of possession. He was bound to make inquiry as to Hogan's right as agent to deliver possession. On the 12th November, 1900, which was the date of his attempt at possession, his attorney had received the deed he had sent to Gardner on the 31st of October, 1900,

which was notice to him that Gardner repudiated any alleged agency of Hogan. This exception is overruled.

6. We have already held that there was no valid contract between Franklin and Gardner, and certainly none such as would interfere with T. D. Chandler which could be specifically enforced. Besides, what had Franklin parted with as value except the $5 paid to Hogan, who was not clothed with power from Gardner to receive any money for him. As before stated, notice to Franklin of the want of such power in such agent will be insisted upon under the law governing agents. If they (agents) have not power to bind their principals, third parties act at their peril, with such unauthorized agents. This exception is overruled.

7. Judge Watts' order referring issues in both actions consolidated under his order and no appeal taken therefrom, becomes the law of this case, and, therefore, Judge Hudson was not at fault. No such question was raised by appellant at the hearing before Judge Hudson. The exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.