## 11111

### BELL v. THOMPSON *ET UX.*

#### (115 S. E., 633)

1. Specific Performance—Evidence Held to Require Finding That Certain Parcel of Realty Was Not Included in Contract of Sale.—In a suit for the specific enforcement of a contract to convey grantor's "home place," and providing that the "sale includes the old store lot," plaintiff claiming that in addition to the home place and the store lot another parcel of property was to have been included, which defendant denied, evidence *held* insufficient to sustain a finding that such other parcel was intended to be included.

2. Fraudulent Conveyances—To Set Aside Deed as Fraudulent, Grantee Must be Shown to Have Participated Therein.—In a suit to set aside a deed by plaintiff's vendor to his wife on the ground of fraud, the wife must be shown to have participated in the fraud.

Before Memminger, J., Horry, 1921.　Reversed and dismissed.

Action by O. J. Bell against M. B. Thompson and wife. Judgment for plaintiff and defendant appeals.

*Messrs. W. F. Stackhouse* and *H. H. Woodward,* for appellants, cite: *Evidence inadmissible to identify property:* 24 S. C., 124; 46 S. C., 277; 111 S. C., 87; 111 S. C., 516; 109 S. E., 295.

*Messrs. Sherwood & McMillian,* for respondent, cite: *Evidence not intended to vary but to explain the contract:* 22 S. C., 26; 16 S. C., 357; 9 S. C., 92; 3 McC. L. 269; 110 S. C., 290; 33 S. C., 367; 112 S. C., 113; 117 S. C., 60; 46 S. C., 411; 104 S. C., 461. *Burden on appellants to show error in findings of Circuit Court:* 16 S. C., 352; 98 S. C., 8; 5 S. C., 415. *Deed of one defendant to his codefendant void:* 69 S. C., 370. *Court right in trying to end litigation by adjudicating rights of parties:* 117 S. C., 195; 109 S. C., 310; 69 S. C., 370; 77 S. C., 64.

January 18, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant, M. B. Thompson, owned some land at Wampee, in Horry county, and lived there for a while. In 1906 he bought a tract of land containing about 25 acres from J. V. Jones (and called herein the Jones tract), and lived upon it. Just across a private road he had a small lot, upon which he had a store, in which he conducted a mercantile business. The store lot came under a separate purchase. In 1911 he bought two other parcels of land from W. P. Floyd, containing 40 and 10 acres, respectively, and herein called the Floyd tract.

There is evidence that M. B. Thompson borrowed some money from his codefendant, Carrie E. Thompson, and promised to convey the Floyd lands to her. That while the food crops of the Floyd lands were mingled with those of the Jones tract, the cotton made on the Floyd tract was given to Mrs. Carrie Thompson, his wife. The Floyd tract was regarded by the family and employees of M. B. Thompson as belonging to Mrs. Thompson. The deed to Mrs. Thompson was not executed until March 11, 1919, but not recorded until January 30, 1920.

On January 24, 1920, the plaintiff, O. J. Bell, and the defendant, M. B. Thompson, made a contract for the sale of land, which is embodied in the following paper:

"Received from O. J. Bell twenty dollars on my home place at Wampee, S. C., balance $6,980.00 to be paid on delivery of title to said property within ten days from date. This sale includes the old store lot. I am to retain and use the buildings until January 1, 1921.

"[Signed] M. B. Thompson.

"January 24, 1920."

On the 30th January, 1920, the defendant executed and delivered to the plaintiff his deed for the Jones tract and

storehouse lot, and received the agreed price from the plaintiff. Immediately after receiving his deed, the plaintiff discovered that the defendant had conveyed only the Jones tract and the store house lot, and demanded a deed conveying the Floyd tract. This the defendant refused to do, claiming that the Floyd tract was not included in the bargain nor covered by the receipt. The plaintiff then brought this action to set aside the deed from M. B. Thompson to Carrie E. Thompson for fraud and for specific performance of the contract to convey the Floyd tract. The defendants denied the fraud, claiming that the conveyance of M. B. Thompson to Carrie E. Thompson was made in good faith for a valuable consideration, and that the Floyd tract is not a part of the home place. The plaintiff seeks to sustain his claim mainly by parol evidence. To this evidence the defendant objected. It will not be necessary to consider this question, because the plaintiff has failed to make out his case, even if the parol evidence is considered. The grantor lived on the Jones tract for several years. The Jones tract had on it quite a number of buildings. It was manifestly his home place. There was a road, a private road, that separated the Jones tract from the storehouse lot and the Floyd tract. It was deemed necessary by the parties to include the storehouse lot across this road. The plaintiff says that Thompson told him that he intended to sell all his property at Wampee, and yet it was necessary to specify the storehouse lot. A public road separated the Jones tract from another tract of land owned by Thompson, and yet the plaintiff makes no claim for that other land. If the Floyd land is included under the general term of "all my lands at Wampee," then the other land is included also. The plaintiff says that the defendant drew a plat of the land on a piece of paper, and included the Floyd tract. The defendant said he did speak of the Floyd tract, but it was not included in the contract of sale of the home place. The plaintiff denies that the Floyd tract was mentioned in the trade. It is (taking the plaintiff's

own statement) not true that there was an explicit agreement to include "the Floyd tract" in the "home place." The plaintiff said the Floyd tract was not mentioned. The plaintiff's only reliance is upon a rough sketch that he saw but once and has been lost.

It cannot be successfully contended that the defendant Thompson ever intended to convey the Floyd tract in the description of the home place. The price of $7,000 for a well-built up place and a storehouse and lot in 1920 is not such an unreasonable price as to warrant an adverse finding on that score. The record shows clearly that the Jones, or home place, and the Floyd place were regarded as separate places among the family and employees of the grantor. This action is based on fraud, and if the plaintiff is right, then Thompson never did intend to convey the Floyd tract. The plaintiff must rely on fraud. To set aside the deed to Mrs. Thompson for fraud, she must have participated in the fraud, and there is not the slightest evidence that she participated in the fraud, or knew of the fraudulent purpose. Much stress is laid upon the fact that Mrs. Thompson's deed was not recorded until the trouble arose. Mrs. Thompson regarded the Floyd tract as her land for years; she may have been careless about having the deed recorded, but when the plaintiff threatened trouble, she had it put on record at once. The record shows that the plaintiff thought he was buying the Floyd tract, but that is not enough. Even if there was conclusive proof that M. B. Thompson knew it, that is still not enough. In *Monaghan Co. v. Dickson,* 39 S. C., 149; 17 S. E., 698; 39 Am. St. Rep., 704, we find:

"In order to make out a case of actual fraud so as to set aside a mortgage, it is necessary to show concurrence in the fraudulent acts by the mortgagees as well as the mortgagors. There was here no proof of combination with the mortgagees, for most of them were not present and had nothing to do with procuring the execution of the mortgage."

There is no proof here to connect Mrs. Carrie E. Thompson with the fraud (if there was a fraud), and only a suspicion that M. B. Thompson knew that Mr. Bell was under a misapprehension as to the land included in the term "home place."

This is just one of those cases in which those who should know better make hasty and ill-considered contracts, and then ask the Courts to relieve them from the consequences of their own unwisdom.

The judgment is reversed, and the complaint dismissed.