12672

YAWKEY v. LOWNDES

(148 S. E., 554)

494

498

502

504

508

*Messrs. George F. VonKolnitz,* and *H. L. Erckmann,* for appellant,

*Messrs. F. W. DeFoe,* and *M. C. Woods,* for respondent,

June 7, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an action for the specific performance of an alleged contract involving certain land of the defendant, William Lowndes, on South Island, in Georgetown County, of this State. The action was commenced on the 10th day of December, 1926. The case was referred to Walter Hazard, Esq., as referee, to take the testimony and report the same back to the Court. The cause came on for hearing before Hon. William H. Grimball, Circuit Judge, at the regular November, 1927, term of the Court of Common Pleas for Georgetown County, upon the pleadings and testimony reported by the referee. On the 7th day of December, 1927, Judge Grimball filed his decree in favor of the plaintiff. From this decree,

the defendant appeals to this Court upon the exceptions set out in the record, and which will be reported.

For an understanding of the issues presented, it is necessary to make a brief statement of the allegations contained in the pleadings, and of the testimony offered in support thereof.

The plaintiff, Thomas A. Yawkey, alleges in his complaint: That in May, 1926, the defendant, William Lowndes, employed H. L. Oliver, a real estate agent of Georgetown County, to sell for him certain real estate on South Island known as the Lowndes property; that on or about the 12th day of May, 1926, said defendant, through said agent, approached plaintiff, in writing, and offered to sell him said property at and for the price of $5,500; that as a result of said negotiations, the plaintiff agreed, in writing, to purchase from the defendant, and the defendant agreed, in writing, to sell to the plaintiff, all remaining Lowndes property on South Island at and for the price of $5,500; that on or about October 11, 1926, the defendant delivered to the plaintiff a deed in fee simple executed by Eliza B. Lowndes, wife of defendant, for the following described tract of land:

"All that certain piece, parcel or lot of land situate lying and being on South Island, in the County of Georgetown, State of South Carolina, and being on South Island, and measuring and containing in front, on Winyah Bay, two hundred and twenty-five (225) feet, more or less, and running back from Winyah Bay to Mosquito Creek, a distance of thirteen hundred (1300) feet; the said parcel or lot of land containing six and one-quarter (6¼) acres, more or less, and butting and bounding as follows, to wit: North by lands of the Church of Messiah; South by lands now or lately of George W. Hazzard; East by Winyah Bay; and West by Mosquito Creek. Being the same premises which were conveyed to me, the said Eliza B. Lowndes, by William Lowndes, by his deed bearing date August 26, 1916, and re-

corded in the office of the Clerk of Court of Georgetown County in Deed Book J., page 251."

That after entering into the said agreement and at the time of the closing of said transaction, the defendant falsely and fraudulently represented to the plaintiff that his wife, Eliza B. Lowndes, was "the owner of all remaining Lowndes property on South Island"; that the plaintiff accepted said deed, when delivered to him, in good faith, as being a compliance on defendant's part with his contract, and paid to him and his wife the full purchase price of $5,500; that thereafter plaintiff was informed that at the time of the closing of said transaction, and long prior thereto, "the title to all Lowndes property on South Island was not in Eliza B. Lowndes but, on the contrary, a portion of the property which defendant had contracted and agreed to sell to plaintiff and which plaintiff had contracted and agreed to purchase from the defendant was in the defendant"; that the defendant is claiming a portion of the Lowndes property on South Island against plaintiff in violation of said agreement, though he is estopped by his fraudulent conduct from so doing to plaintiff's great hurt and damage, and prays that it be adjudged by the Court that any and all property claimed by the defendant abutting on, adjacent to, or included in the property conveyed to the plaintiff by Eliza B. Lowndes is property of plaintiff; that the defendant be ordered and required to convey to plaintiff all property claimed by him abutting on, adjacent to, or included in the property conveyed to the plaintiff by Eliza B. Lowndes.

The answer of defendant denies the main allegations of the complaint; alleges that in 1926 his wife, Mrs. Lowndes, listed with Oliver her lot with residence on South Island; that he never listed his lot for sale or employed any one to sell same, nor did he ever sell same or agree so to do; sets up an agreement, dated May 29, 1926, of Mrs. Lowndes with H. L. Oliver, as agent, to purchase her property; that in said agreement the words "and other realty" were inserted by

Oliver and stricken out by her before execution; that said contract was carried out and confirmed by plaintiff, and a deed from Mrs. Lowndes, dated October 11, 1926, was delivered to plaintiff and accepted, the money paid, and a lease was executed on the same day as deed by Yawkey to Mrs. Lowndes in pursuance of said contract. Defendant also pleads statute of frauds.

In support of the allegations of the complaint, plaintiff introduced a letter bearing date May 12, 1926, addressed to plaintiff by H. L. Oliver, set out in the record as Exhibit A; a telegram from plaintiff to said Oliver bearing date May 20, 1926, set out in the record as Exhibit B; telegram from said Oliver to plaintiff bearing date May 20, 1926, set out in the record as Exhibit C; a telegram of May 21, 1926, from plaintiff to said Oliver, set out in the record as Exhibit D; telegram bearing date May 21, 1926, from Oliver to plaintiff, set out in the record as Exhibit E, and the deed from Eliza B. Lowndes to plaintiff bearing date October 11, 1926, conveying the lands as described in the complaint; also abstract prepared by James A. Wingate, an attorney, dated October 5, 1926. Let the exhibits from A to E, inclusive, be reported.

"Before specific performance can be decreed, it is first necessary to determine whether there is a contract between the parties or not. If there is no contract, then there is nothing to enforce. It would be speculative for a Court to say what would have been the rights of the parties if they had made a contract. The declaration of opinion would be simply the individual opinions of the members of the Court." *Adams v. Power Co.,* 101 S. C., 170, 85 S. E., 312.

"The Courts have no power to make contracts for people and then require them to perform them. They can only require parties to contracts to specifically perform the contracts they themselves make. This is fundamental law, and no au-

thority is needed for it." *Fairey v. Strange,* 112 S. C., 155; 98 S. E., 135.

■ "It is a well-settled principle of equity that the Courts will not decree specific performance if the contract fails to express the true agreement of the parties by reason of fraud, accident, or mistake. *Anthony v. Eve,* 109 S. C., 255, 95 S. E., 513; *Marthinson v. McCutchen,* 84 S. C., 265, 66 S. E., 120.

"Also if the contract is indefinite, uncertain, or ambiguous, or does not embrace all the material terms, it will not be enforced. 6 Pom. Eq. Jur., §§ 764, 778; *Welch Pub. Co. v. Johnson Ry. Co.,* 78 W. Va., 350, 89 S. E., 707, L. R. A., 1917-A, 200, 204.

■ "The right to the remedy of specific performance is a matter of sound judicial discretion controlled by established principles of equity and exercised by a consideration of all the circumstances of each particular case. 6 Pom. Eq. Rem., § 762." *Maxwell v. Standard Furniture Co.,* 127 S. C., 225, 120 S. E., 834.

In *Anthony v. Eve,* 109 S. C., 255, 95 S. E., 513, the present Chief Justice, speaking for the Court, laid down the rule as follows:

"The enforcement of a contract for specific performance rests in the sound discretion of the Court, and in order for the plaintiff to avail himself of this doctrine: 'He must show a clear, definite and unequivocal agreement together with acts of performance or parts of performance.'

"It is not a matter of absolute right but rests in the sound discretion of the Court and the exercise of that discretion will depend upon the facts and circumstances of each case; a Court of equity will not decree specific performance unless the contract is fair, just and equitable, nor if it fails to express the true agreement of the parties by reason of fraud, accident or mistake. *Crawford v. Crawford,* 77 S. C., 211 [57 S. E., 837]; *Marthinson v. McCutchen,* 84 S. C., 265

[66 S. E., 120] ; *McChesney v. Smith,* 105 S. C., 178 [171, 89 S. E., 639]."

Was there a contract between plaintiff and the defendant? It is expressly admitted by both the plaintiff and his attorney, Mr. De Foe, under oath, that the only contract claimed was that disclosed by the letter and telegrams which passed between plaintiff and Mr. Oliver. These communications, therefore, contain the whole alleged contract, and upon them rests the rights of the plaintiff.

There is not a particle of evidence to sustain the allegation of the complaint that the defendant had listed his real estate on South Island with Mr. Oliver other than that contained in the letter from Oliver to plaintiff. Nor is there a particle of evidence to sustain the allegation that the defendant had sold, or agreed to sell, his said land on South Island to the plaintiff. By reference to Exhibit A, it will be observed that Mr. Oliver offered the plaintiff a little over 6 acres of Lowndes land on South Island, together with a cottage and other outbuildings thereon. By reference to the deed from Eliza B. Lowndes to the plaintiff, he received this quantity of land with the residence thereon in which Lowndes lived. It is true in his telegrams to Oliver, plaintiff referred to all of the lands owned by Lowndes, but there is not a particle of evidence showing that the defendant had ever authorized Oliver, or any one else, to sell his land on South Island to the plaintiff, or any one else.

Even if the statement in Exhibit A to the effect that Oliver had listed the William Lowndes land on South Island were admitted (though it is positively denied by defendant), at best this could only be authority for Oliver to find a purchaser and bring him to defendant, and not authority to make a complete and binding sale.

In *Edwards v. Coleman,* 139 S. C., 369, 138 S. E., 42, it was said:

"The owner of land undoubtedly has it within his power to clothe his agent with power to both find a purchaser and

to make a complete and binding sale. But the mere employment of an agent to find a purchaser and bring him to the owner, confers upon such agent no authority to bind his principal beyond his instructions. We think it would be a dangerous doctrine if one merely authorized to find a purchaser for property at a fixed price could, without further negotiations with the owner, enter into a contract for the sale thereof that would be binding upon the owner. A real estate broker is a special agent of limited authority, and is strictly confined to the instructions given him, and a third party dealing with him does so at his own peril. We think our conclusions are amply sustained by authority. See, 9 Corpus Juris, 525, 526; *Shillinglaw v. Sims*, 86 S. C., 76, 67 S. E., 906; *McCallum v. Grier*, 86 S. C., 162, 68 S. E., 466, 138 Am. St. Rep., 1037; *Chandler v. Franklin*, 65 S. C., 544, 44 S. E., 70."

"In conformity to settled principles of the law, grounded in reason and sound public policy, among others, that it is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority." *Bacot v. South Carolina Loan & Trust Co.*, 132 S. C., 340, 127 S. E., 562.

It is clear, we think, that plaintiff wanted all of the Lowndes land on South Island. He may have had, and apparently did have, the impression that he was purchasing all of the Lowndes property on South Island, but, as above pointed out, there is not a particle of evidence that he bought all of said lands. This case is not unlike the case of *Bell v. Thompson*, 122 S. C., 400, 115 S. E., 633, and we think is controlled thereby.

Having held that there was no contract between the plaintiff and defendant whereby the defendant agreed to sell his lands on South Island to defendant, it follows that there can be no specific performance.

There is another reason why the decree of the Circuit Judge cannot be sustained.

On April 4, *1890,* by deed duly recorded, George W.

Hazard purchased from the sinking fund commissioners a lot on South Island, said to contain 3 acres, with fixed boundaries, viz.: Winyah Bay on east; Mosquito Creek on west; lot of the Church of the Messiah on the north; south by lot of Trenholm. This lot evidently contained some 12½ acres, and was evidently subdivided by Hazard into two lots of 6¼ acres each. The northern half, containing 6¼ acres, was again sold for taxes, and on July 30, 1897, was purchased by William Lowndes from the sinking fund commissioners; deed recorded October 25, 1897, in clerk's office and on 30th July in Secretary of State's office.

On————day of————————, 1897, by deed recorded on August 2, 1897, Clerk's office, George W. Hazard executed a quitclaim deed to William Lowndes of this lot. This left the southern half of this property in George W. Hazard; the lot being about the same size as the northern half.

On August 26, 1916, by deed recorded August 30, 1916, William Lowndes conveyed to his wife, Eliza B. Lowndes, the northern portion of said Hazard property, describing it as 6¼ acres, bounded on the north by Church of the Messiah; east by Winyah Bay; south by George W. Hazard, and west by Mosquito Creek, 225 feet in front by 1,300 feet deep. The deed contains a general warranty.

On February 24, 1919, William Lowndes purchased from George W. Hazard all of the land remaining in him and took a deed recorded March 18, 1919, from the said George W. Hazard, with a description covering the entire lot purchased from sinking fund commission, describing same as 3 acres, bounded north by Church of the Messiah; east by Winyah Bay; west by Mosquito Creek; and south by Trenholm.

Lowndes, having conveyed by warranty to his wife the northern portion of this lot, any conveyance to him of this portion could only inure to the benefit of his wife. At any rate, George W. Hazard then only owned the southern half

of the lot, so that his deed to William Lowndes could have been effective only as to that portion.

The result of these conveyances was as clearly shown by these recorded deeds that Eliza B. Lowndes was the owner of the northern portion of the Hazard property, containing 6¼ acres, and William Lowndes was the owner of the southern portion of same, of about the same size. Mr. and Mrs. Lowndes lived in the main residence on the lot owned by Mrs. Lowndes. There was also a residence on the William Lowndes property.

On May 29, 1926, Mrs. Lowndes agreed, in writing, to sell her lands on South Island for $5,000 net to her. On the 11th day of October, 1926, she executed and delivered a deed conveying her lands on South Island to the plaintiff. On the same date, plaintiff executed a lease on the premises described in said deed to Mrs. Lowndes for the term beginning October 11, 1926, and ending May 31, 1927. In this lease, plaintiff recites the aforementioned agreement of May 29th by Mrs. Lowndes and the deed of October 11th.

An abstract was prepared by Mr. Wingate, an attorney-at-law. For whom Wingate was attorney does not appear. Both plaintiff and defendant deny that he was attorney for either of them. Mr. Oliver refers to him as "our attorney." At any rate, the abstract was prepared, together with the proposed draft of the deed from Mrs. Lowndes to the plaintiff, and was submitted by Mr. Oliver to the plaintiff and his attorney, Mr. De Foe, for inspection, prior to the execution of said deed. They examined the same, not in New York, but in Georgetown, and stated to Mr. Oliver, according to their own sworn testimony in this case, that the same was satisfactory. They further instructed Mr. Oliver to forward the deed, when executed, together with abstract, with draft attached, to the plaintiff in New York, and the draft would then be paid. Pursuant to these instructions, Mr. Oliver forwarded the said papers, together with the proposed lease from plaintiff to Mrs. Lowndes, and plaintiff and his at-

torney, Mr. De Foe, went to the bank in New York and examined the abstract, deed, and other papers, and, finding the same to be satisfactory, paid the draft.

If the plaintiff had the knowledge of South Island, which he would have the Court to understand that he did, he knew, or should have known, that the south boundary of the land described in Mrs. Lowndes' deed, to wit, "land now or lately of George W. Hazard," was owned by some person other than himself. The deed to the defendant, as well as that to Mrs. Lowndes, was of record in the proper office in Georgetown County. It was the duty of the plaintiff to examine the records and to know what he was buying. According to plaintiff's own testimony, he was relying not upon representations made by the defendant, Mr. Oliver, or any one, other than his own attorney. As said in *Farrar v. Churchill*, 135 U. S., 609, 10 S. Ct., 771, 34 L. Ed., 246: "If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations."

Whatever may have been the plaintiff's desires, as disclosed in his telegrams, it is certain that all the negotiations were merged in the deed executed by Mrs. Lowndes to him on October 11th, and in the lease executed by him to Mrs. Lowndes on the same date.

It is further contended by plaintiff that the defendant is estopped to deny that Mrs. Lowndes was the true owner of all the Lowndes lands on South Island. We find no evidence of any estoppel in this regard. It is not contended that the defendant made any representations, or did any positive act, tending to cause plaintiff to suppose that Mrs. Lowndes was the true owner of all the Lowndes lands on South Island, other than the statement in the Oliver letter (Exhibit A). There is not a particle of evidence that the defendant knew of the statement in this letter, or of the statements in plaintiff's telegrams to Oliver. It cannot be said that plaintiff was induced by any active conduct of defend-

ant to enter into an agreement to purchase all the Lowndes lands for $5,500. In *Farrar v. Churchill, supra,* the Court further says:

"The general principles applicable to cases of fraudulent representations are well settled. Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false and must be acted upon by the other party in ignorance of its falsity and with reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate and material."

The judgment of this Court is that the decree of the Circuit Judge be, and the same is hereby, reversed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS (dissenting): In my opinion, Judge Grimball's decree should be affirmed for the reasons stated by him and I therefore dissent. Let that decree be reported.

MR. JUSTICE COTHRAN (dissenting): It appears that the property on South Island consisted originally of a single tract containing about 12 acres of land. In the course of time, it came to be divided into two subdivisions, each containing about 6 acres; the one known as the northern half and the other as the southern. At the time of the beginning of the negotiations from which the present controversy has arisen, the defendant, William Lowndes, and his wife lived upon the northern half, upon which was a comfortable home. The title to it was in the name of Mrs. Lowndes; the title to the southern half was in the name of the defendant, Mr. Lowndes.

The plaintiff, Yawkey, had purchased a large area of land upon the island, a part of which adjoined the original tract of 12 acres; the acquisition of *the whole* was deemed essential to the enjoyment of his holdings by the plaintiff, Yawkey; he did not need *a part* of the 12-acre tract. It does not

appear that the defendant, Lowndes, would have had any special interest in retaining the southern half after disposing of his residence located upon the northern half and moving away.

One H. L. Oliver was at the time a real estate broker in business at Georgetown, entirely unknown to Yawkey, but well known to Lowndes, with whom he had had previous real estate dealings. Oliver was interested in consummating sales of real estate upon commissions.

On May 12, 1926, Oliver, who had had no previous dealings with Yawkey, wrote him in New York, that he had "listed for sale the lot on South Island of Mr. William Lowndes, consisting of a little over six acres of land and having upon it a nice cottage and a number of outbuildings. Mr. Lowndes sets a price of $5,500 on this property and I am writing to inquire if you would care to buy same."

These inferences I think are clearly to be drawn from the letter: That Lowndes had engaged Oliver as a real estate broker, to dispose of the property described, at a fixed price, and that the property referred to was the northern half of the original tract upon which Mr. and Mrs. Lowndes were living.

To this letter Yawkey replied by wire on May 20th, offering $5,000 "for the Lowndes property," and stating: *"I understand this includes all lands owned by Lowndes adjacent to his house."*

On the same day Oliver replied by wire: "Your wire. Offer submitted. Lowndes holds for $5,500. Will furnish abstract *showing title all his lands on South Island."*

On the 21st Yawkey wired Oliver: "Received wire. I hereby accept your offer to sell me all remaining Lowndes property on South Island for consideration of $5,500."

On the same day Oliver wired Yawkey: "Your offer and condition Lowndes property accepted. Please mail binder say two hundred."

Yawkey remitted the $200 binder requested by Oliver to him; Oliver retained $100 of it and remitted the other to Lowndes on May 22d.

Upon the receipt by Lowndes of Oliver's letter of May 22d, inclosing check for $100 to be applied, as he stated, "on the purchase of your South Island property which has been listed with me for sale since December 7, 1925," Lowndes wrote to Oliver by registered letter, dated May 25th, stating in effect that the property being sold belonged to Mrs. Lowndes and that the check should be drawn in her favor, suggesting: "You will please redraw the agreement along these lines; make the check payable to Mrs. Lowndes and reserve for me twelve months' possession of the property and we will then be able to close the deal." This letter was written by Lowndes in Oliver's office, where he had gone to see Oliver, who happened to be out. Why it was registered does not appear.

Thereafter, on May 29th, a written agreement was signed by Oliver and Mrs. Lowndes by which she agreed to sell (the purchaser not being named) her property on South Island for the sum of $5,000 net, and agreeing to furnish an abstract of the title to the property, also acknowledging re-receipt of $100 as binder upon the sale as part payment of the purchase price.

Notice of the letter of Lowndes to Oliver stating that the property to be sold belonged to Mrs. Lowndes was not communicated to the plaintiff Yawkey; nor was any notice given to him of the written agreement between Oliver and Mrs. Lowndes above referred to.

The closing of the transaction was delayed pending the abstract of title to be furnished by Mrs. Lowndes until October 11, 1926, at which time a deed was prepared by Oliver covering the northern half of the property, executed by Mrs. Lowndes and forwarded with a draft for $5,300 upon Yawkey in New York. The papers were examined by Yawkey and his attorney, the draft was paid, and the deed accepted.

Later it appeared that the deed delivered did not cover all of the Lowndes property on South Island, but that there remained the southern half of the original lot, the title to which was claimed by Mr. Lowndes.

The plaintiff claims that the contract between him and Oliver, acting as agent for Lowndes, covered the entire tract, both the northern and the southern halves, and that the southern half which was intended to be acquired by Yawkey was by deception and fraud of Lowndes intentionally omitted from the deed which was executed and delivered.

The matter was heard by his Honor, Judge Grimball, upon testimony taken before a special master. He filed a decree, dated December 7, 1927, in favor of the plaintiff, and from this decree, the defendant has appealed.

The letter from Oliver to Yawkey, dated May 12, 1926, the telegram from Yawkey to Oliver, dated May 20th, the telegram from Oliver to Yawkey, dated May 20th, the telegram from Yawkey to Oliver, dated May 21st, and the telegram from Oliver to Yawkey dated May 21st, which are set forth above constitute the entire written evidence of the contract between the parties, in pursuance of which the plaintiff paid the agreed price and accepted the deed executed by Mrs. Lowndes.

It is indisputable that the plaintiff acted in good faith and dealt with Oliver as the agent of the owners of all the remaining Lowndes property on South Island; that he entered into a written agreement evidenced by the letter and telegrams for the purchase of that property; that he paid the purchase price and accepted the deed with the understanding and under the representation through Oliver that it covered all the remaining Lowndes property on South Island; and that he did not learn until subsequently thereto that a part of the property had not been included in the deed.

The defense of the defendant was based upon the theory that the plaintiff had employed Oliver as his agent and that as such agent Oliver had entered into written contract with

the defendant's wife for the purchase of her individual property on South Island.

It is indisputable, so far as the plaintiff is concerned, that he was a party to but one contract, the contract covering specifically "all lands owned by Lowndes adjacent to his house"; "all his lands on South Island"; "all remaining Lowndes property on South Island." It seems unquestionable that for his purposes Yawkey desired to purchase all of the Lowndes property on South Island—a proposition which was specifically agreed to by Oliver in his telegram of May 20th and confirmed by his telegram of May 21st. The contract is clear and explicit and there could be no dispute as to its terms; it called for the sale to the plaintiff of all of the Lowndes property on South Island, and if Oliver was the agent of Lowndes to consummate this contract and a part of the property was omitted in the final transaction in which the deed was executed, there can be no doubt as to the right of the plaintiff to have the contract as entered into consummated.

The evidence establishes express authority from the defendant to Oliver to sell his South Island property. The statements and representations made by Oliver in his communications with the plaintiff constitute strong evidence of this fact. While agency may not be established by the declarations and conduct of the alleged agent alone, they are admissible as circumstances in connection with other evidence tending to establish the fact of agency. *Bass v. American Products Export & Import Corporation Co.,* 124 S. C., 346, 117 S. E., 594, 30 A. L. R., 168; *Cogswell v. Cannady,* 135 S. C., 365, 133 S. E., 834; *Watkins v. R. Co.,* 97 S. C., 148, 81 S. E., 426.

In Oliver's letter to plaintiff of May 12th which opened these negotiations, there having been up to that time no business relations whatever between Oliver and Yawkey, he said: "I have listed for sale the lot on South Island of Mr. William Lowndes," upon which he had set a price. His tele-

gram of the 20th is to the effect that he had submitted the plaintiff's counter proposition to Lowndes and purported to give the defendant's reply thereto. In Oliver's letter to Lowndes of May 22d, he stated, "I am enclosing herewith my check for $100 as a deposit to show good faith on the part of my client to apply on the purchase of your South Island property which has been listed with me for sale since December 7, 1925." In Lowndes' reply to this letter he does not deny the truth of this statement, nor does he intimate that his South Island property had not been listed with Oliver since the preceding December; in fact, in his testimony he admitted that the statement was correct. It is therefore established by this undisputed evidence that the defendant's South Island property had been for months listed with Oliver for sale and that the sale was made in pursuance of such listing.

Yawkey's telegram of May 20th stipulated that the sale should include "all lands owned by Lowndes adjacent to his house." Oliver's reply on the same day stated that he had submitted Yawkey's offer to Lowndes, but that Lowndes held out for $5,500, and that he (Oliver) would furnish abstract showing good title to all of Lowndes lands on South Island. On May 22d Oliver wrote Lowndes, reporting the sale of "your South Island property" and that on the previous Thursday Lowndes had agreed to this in the course of a telephone conversation. When Lowndes replied to this letter he made no intimation that such conversation had not taken place and did not deny the truth of the statement. It appeared beyond doubt that after Oliver received the telegram from Yawkey stating the proposition for purchase, he submitted the correspondence to Lowndes, and his telegram of the 21st was the final acceptance of the proposition which Yawkey had made.

The defendant not only admitted the listing of the property as indicated above, but also admitted that he consulted with Oliver subsequently thereto and before the sale to plain-

tiff in regard to his progress. He made no protest or objection when Oliver reported the sale of "your South Island property" and in his reply he refers to the property being sold as the sale of "my residential property on South Island."

I do not think that Lowndes was at all disingenuous in stating in his testimony that the letter of May 25th to Oliver had reference to the sale of his individual property. Upon its face it shows otherwise and that the correspondence was in reference to the property at that time standing in the name of Mrs. Lowndes. Until the receipt of that letter all of Oliver's communications were addressed to the defendant; subsequently they were addressed to both the defendant and his wife, indicating that prior to the receipt of the letter Oliver had been dealing with the defendant alone on the assumption that he was the only party interested. After its receipt he was treating with both as owning the two subdivisions of the original tract, all of which was intended to be covered by the sale to Yawkey.

I do not think that there is any doubt but that Oliver was authorized by the defendant, to sell all of his property on South Island; that the plaintiff proposed to buy all of the Lowndes property; that Oliver as the agent of the Lowndes' so understood the proposition and accepted it after submitting it to Lowndes; and that the failure to include both subdivisions in the deed was clearly a failure to carry out the terms of their contract.

In the opinion submitted by Mr. Justice Blease occur these statements: "It is further contended by plaintiff that the defendant is estopped to deny that Mrs. Lowndes was the true owner of all the Lowndes lands on South Island. We find no evidence of any estoppel in this regard. It is not contended that the defendant made any representations, or did any positive act, tending to cause plaintiff to suppose that Mrs. Lowndes was the true owner of all the Lowndes lands on South Island, other than the statement in the Oliver letter (Exhibit A). *There is not a particle of evidence that the*

*defendant knew of the statement in this letter or of the statements in plaintiff's telegrams to Oliver.* It cannot be said that plaintiff was induced by any active conduct of defendant to enter into an agreement to purchase all the Lowndes Lands for $5,500."

A review of the relations then existing between Mr. Lowndes and Oliver, the correspondence by letter and telegrams passing between Oliver and Yawkey, and the conduct of Oliver in his communications with Mr. Lowndes in reference to the pending negotiations and their conclusion demonstrate to a mathematical certainty that the statements above quoted are not sustained by the evidence.

It is practically admitted by Mr. Lowndes that he had listed with Oliver for sale his property on South Island, and that it had been so listed since the previous December.

Oliver then, as the authorized broker of Mr. Lowndes, writes to Yawkey, with whom he had had no dealings, knowing that Yawkey owned other property on the Island and that the acquisition of the Lowndes property by him would be greatly to his advantage, offering the property of Mr. Lowndes on South Island at $5,500, *the price set by Mr. Lowndes,* which, of course, was the result of previous conference with him.

Yawkey replied to this letter by wire, making a counter proposition of $5,000, and adding, "I understand this includes all lands owned by Lowndes adjacent to his house," allowing him a reasonable time to vacate. Lowndes was then residing with his family upon the northern half of the Hazard property. The counter proposition, therefore, referred to the northern half and all lands owned by Lowndes adjacent to it, which included the southern half.

Oliver wired in reply that he had submitted the counter proposition to Mr. Lowndes, but that he held out for $5,-500, and that he would furnish an abstract of title to "all his lands on South Island," necessarily including the southern as well as the northern half. It is impossible to conceive that

this would have been done without full knowledge of Mr. Lowndes of what Oliver had proposed and what Yawkey had countered with. I do not understand what Oliver meant by saying that Mr. Lowndes was "not anxious to sell *but must do so under contract,*" unless he meant that Mr. Lowndes was under contract with him, if he could find a purchaser at the price fixed, to comply. This finds support in the letter of Mr. Lowndes of May 25th, suggesting that: "You will please re-draw the agreement along these lines"—evidently referring to an agreement between himself and Oliver in reference to a sale of the property.

Yawkey wired in reply, accepting the original proposition of Oliver, which he construed as covering all of the remaining Lowndes property on the Island. On the same day Oliver replied by wire: "Your offer *and condition* Lowndes property accepted." It is inconceivable that this could have occurred without communicating the situation to Mr. Lowndes and receiving his approval.

Notwithstanding the zeal with which it appears that Mr. Lowndes was following up the negotiations, he would have the Court to believe that while in Oliver's office, presumably about the matter in hand, Oliver presented to him a telegram from Yawkey, accepting his proposition for the sale of all of the Lowndes land upon the Island, *and that he did not read it* and was never informed of its contents.

I have not the slightest doubt but that Mr. Lowndes listed the entire holdings of himself and wife, doubtless innocently representing himself as the owner of both subdivisions, with Oliver for sale at a fixed price; that he was deeply interested in each step in the negotiations, frequently conferring with Oliver in reference to the progress of the negotiations, and was fully informed of everything that passed. He must have known that Yawkey was intending to buy what he proposed all of the land of the Lowndes' on the island. If so, it was disingenuous, to say the least, to allow the negotiations to be concluded under that known misapprehension. He should

have notified Yawkey, not Oliver, his own agent, that he did not intend to sell any part of his southern half, when he knew that Yawkey was intending to buy it as well as the northern half.

When Yawkey was informed that the land proposed to be sold belonged to Mrs. Lowndes, it was but natural for him to assume that Mrs. Lowndes' deed would convey all that he was buying; that Mr. Lowndes' property, not an unusual condition, was in his wife's name.

I think that the Circuit Judge's decree is full, clear, and convincing upon the right of the plaintiff to the relief which he asks and that the decree should be affirmed.

MR. CHIEF JUSTICE WATTS concurs.